[Civ. No. 15895. First Dist., Div. One. May 18, 1954.]

JACK W. JAMES, Respondent, v. KEY SYSTEM TRANSIT LINES (a Corporation), Appellant.

Donahue, Richards, Rowell & Gallagher and George E. Thomas for Appellant.

Ryan & Ryan and Daniel V. Ryan for Respondent.

BRAY, J.—From a plaintiff's judgment for $25,000, on a jury verdict, defendant appeals.

### QUESTIONS PRESENTED

1. Defendant does not question the sufficiency of the evidence to support the jury's implied finding of defendant's negligence, but contends plaintiff was guilty of contributory negligence *as a matter of law.*

2. Did the court err in refusing to inform the jury after its retirement that plaintiff's deposition, or a portion of it, could be read? If so, was such error prejudicial?

### FACTS

For over two and a half years plaintiff had been a policeman of the city of Berkeley, engaged in parking meter maintenance. He drove a three-wheeled motorcycle and at the time of the accident was engaged in checking parking meters. Defendant maintained two sets of interurban tracks along West Shattuck Avenue. Under agreement with the city, defendant was required to pave and keep in repair the portion of the street occupied by the tracks and for 2 feet on each side thereof. In the intersection of West Shattuck Avenue and Addison Street there is a "crossover" and a switchbox which is partly covered by wooden planking and partly by metal plate. Plaintiff's cause of action was based upon the alleged careless and negligent maintenance of the street by defendant in the area immediately adjacent to defendant's tracks "in that they permitted a large hole or depression to remain, and exist for a long period of time, in said street adjacent to said tracks." The evidence showed that the pavement was in a defective condition, that pieces were broken out and some of the pavement raised above and some below the level of the tracks. Plaintiff testified that there were several holes there. Plaintiff was familiar with the crossing, having gone over it at least twice a day during his employment by the city, and knew of its defective condition for that length of time. On this day, having checked the meters on one side of Shattuck, he was required to go to the other side to check the meters there. This required him to cross defendant's tracks at the intersection. He was proceeding at 5 to 7 miles per hour, in low gear, was in the act of shifting to second gear, had turned his head slightly to look for traffic when "there was a terrific snap in my neck . . .," the motorcycle "took a sharp jolt," he heard the switchbox cover clanking and had no further recollection

until he was at the west curb of Shattuck 10 to 15 feet from the intersection. Plaintiff's neck injury was serious. Defendant contended at the trial, in addition to contending plaintiff was guilty of contributory negligence, that the pavement was not defective as claimed, and that the accident happened at a gap in the switchbox cover concerning which there was no complaint of negligent maintenance. As the sufficiency of the evidence to support the jury's implied adverse findings on the two latter subjects is not challenged, it is unnecessary to detail defendant's evidence in regard thereto.

1. *Contributory Negligence.*

█ The contention that plaintiff, as a matter of law, was contributorily negligent, is based upon plaintiff's testimony that he knew for more than two and a half years the condition of the pavement where the accident occurred, and that he steered his motorcycle into the place where the condition existed. This contention overlooks the fact that plaintiff's duties required him to cross at this intersection, that the testimony shows that the pavement adjacent to the tracks against the entire width of Addison Street was in the same condition, and he had no choice except to cross the rough pavement; that in spite of this condition plaintiff had never theretofore experienced any bumps or difficulty in crossing; that he was in the process of making a left-hand turn and looking for traffic, thereby momentarily and necessarily taking his eyes from the pavement, and that he did not deliberately ride into any particular hole or depression. While the evidence might have supported a finding of contributory negligence, it did not compel it. Whether plaintiff, under all the circumstances of the case, was guilty of contributory negligence because of his knowledge of the conditions at the intersection, was a question of fact and not of law. We cannot say that the evidence of contributory negligence meets the test required to prove it as a matter of law. █ This test is stated in *Severin* v. *Cox,* 104 Cal.App.2d 331, 333-334 [231 P.2d 134], quoting from *Anthony* v. *Hobbie,* 25 Cal.2d 814, 818 [155 P.2d 826]: " 'The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences

that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. (Citing many cases.)' "

## 2. *Plaintiff's Deposition.*

In impeachment of plaintiff, defendant used a portion of the deposition taken of plaintiff by defendant, reading that portion into evidence. Thereafter defendant offered the whole deposition, and suggested a stipulation that any part of it might later be read to the jury. Plaintiff refused to stipulate that any portion could be read other than that which had already been read. Defendant then stated he would later ask permission to read it into evidence. The deposition was admitted. In argument defendant read to the jury portions of the deposition, apparently additional to those theretofore read. The entire deposition was not read. The jury retired to deliberate at 2:16 p. m. At 3:04 in chambers, the judge informed counsel that the jury had requested a certain exhibit and "to see the deposition" and that he intended to send in all the exhibits but not the deposition. All parties agreed and now agree that it would be improper to give the jury the deposition. (Code Civ. Proc., § 612, prohibits it.) Defendant immediately requested that the jury be told that it could have reread the portions already read, if it so desired. Plaintiff objected on the ground that the jury had not asked to have them read. The court refused to instruct the jury as requested. At 3:50 p. m. the judge informed counsel that the jury had asked the bailiff to convey a message to the judge "that they considered the deposition the important thing." Defendant again requested that the jury be informed of its right to return to the courtroom and have read to it such portion of the deposition as had been read into evidence, at least. Plaintiff then objected to such an instruction and stated that if any of the deposition was to be read the whole should be read but objected to any reading whatever as the jury had not asked for a reading. Considerable discussion by court and counsel ensued, defendant insisting that the jury be informed of its right to have, if not the whole deposition, the portion already read, again read. Plaintiff insisted that no instruction be given the jury but that if any of the deposition were read the whole should be read. The court then denied defendant's request. Thereupon defendant further requested that the jury be returned to the courtroom and asked by the court

just what it wanted from the deposition. "It is just like having only one section of the testimony read." Plaintiff stated: "That would follow my point, that if the jury should hear the deposition, they should hear the entire deposition with the exception of the objections." Defendant then stated that the jury was entitled to be told of its right to have the whole of the deposition read, less any objectionable matter. Plaintiff again objected to any instruction being given. Thereupon the court instructed the bailiff to inform the jury that the law prohibits the taking of a deposition to the jury room. In its original instructions to the jury the court did not inform the jury of its right to return to court for testimony and instructions, which right is provided in section 614, Code of Civil Procedure. At 4:40 p. m. the jury returned to the courtroom with a 10 to 2 verdict in favor of plaintiff.

It is clear from the action of the jury that it wanted to know something that was in the deposition, and that it did not know how to get the information. It first asked for the deposition itself. On being informed that it could not be taken to the jury room the jury informed the judge that in its mind it considered the deposition "the important thing." This message obviously would not have been sent if the jury did not feel it needed at least some portion of the deposition to clear up confusion over some part of its contents. It was the duty of the judge to have the jury brought into the courtroom, to ascertain what the jury wanted from the deposition, or, at the very least, to inform it that it had a right to have at least a portion of the deposition read. If on returning to the courtroom the jury asked for more than it was entitled to have read, the judge could, of course, limit it to that to which it was entitled. But to refuse to inform it of its rights in this respect, when the judge was, in effect, informed that the jury was in difficulty in some way about the deposition, clearly prevented a fair trial, unless the matters in the deposition were inconsequential. While the jury's action did not constitute in so many words a request for a reading of some portion of the transcript, such action can reasonably be interpreted only as such a request, and as held in *Kerner* v. *Surface Transportation Corp.*, 266 App.Div. 356 [42 N.Y.S. 2d 296], a court's refusal to comply with the jury's request in this respect constitutes error. *McAvoy* v. *Helms Bakeries*, 43 Cal.App.2d 587 [111 P.2d 431], upon which plaintiff relies, is not in point. There the reviewing court found that

the trial judge had instructed the jury that if it wanted any portions of the instructions reread at any time, to so inform the bailiff, and that no request therefor in any form had been made.

In his brief plaintiff stated that shortly prior to the trial, the members of this jury together with all other members of the panel were given general instructions including an instruction embodying the contents of section 612, Code of Civil Procedure, and on oral argument offered to augment the record to show that fact. We denied the request primarily because such fact would make the court's refusal here no less error. This brings us to the question of the effect of the error.

██ Concerning the condition of the street at the scene of the accident plaintiff testified that there were "Pieces broken out, some of it raised above the level of the track, some below, very rough." ". . . it had just been chewed up, broken out, and it was a drop of, oh, I'd say three to four inches . . . from below the level of the rail." "Some of the pavement was missing that chunks had broken out." ". . . there was no pavement there. That is, it had been broken out . . . pieces of pavement ground up, chewed up." His motorcycle "bounced—I mean, dropped down in that depression in the pavement between the two tracks." He "received a jolt as . . . [he] came to the rail . . . The east rail of the cross-over." The difference between the level of the rail and the pavement was "I'd say three inches." He testified when asked if the hole there (meaning where he felt the jolt) was any deeper than any place else, that there were several along the track that were just as bad; that they were not holes one could number, nor was it just one hole, "just uneven, down and up." Nothing there was flush with the track. He may have told the referee of the Industrial Accident Commission at a hearing that he was crossing "the switch at the location of the switchbox." In his deposition he stated that the pavement was broken out and soft above the level of the rail at least 2 inches and soft below and where the pavement was gone "it is a pretty deep hole."

He testified that the front wheel of the motorcycle was "wrenched," "Jerked. A violent twist." In his deposition when asked if that wheel turned at all he said "no." There he also stated that the motorcycle got "plenty of bounce" and stated that he evidently then lost control of it.

The above matters are the only ones in the deposition which

were read to the jury. It is conceded that some other portion or portions were read by defendant in argument. For this reason and because defendant claims that the jury was entitled to have the whole deposition, less objectionable matter, read to it if it so desired (a matter which we deem it unnecessary to determine) we have studied the entire deposition. Neither in the foregoing extracts from the deposition nor in any other part of it do we find any substantial contradiction with plaintiff's testimony at the trial nor anything affecting his credibility. Nor do we find anything which in any reasonable probability would have caused any of the jurors to vote differently than they did. We are forced to the conclusion that the error has not resulted in a miscarriage of justice. (See Const., art. VI, § 4½.)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 14, 1954.