[Civ. No. 17439.   First Dist., Div. One.   Jan. 27, 1959.]

STEPHEN J. PERRY, Plaintiff and Appellant, v. FIRST CORPORATION et al., Defendants; SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents; HARTFORD ACCIDENT AND INDEMNITY COMPANY, Intervener and Appellant.

Edises, Treuhaft, Grossman & Grogan and Aubrey Grossman for Appellants.

Ricksen, Freeman, Hogan & Vendt and Barfield & Barfield for Respondents.

WOOD (Fred B.), J.—A carload of empty drums belonging to Dewey and Almy Chemical Company had been returned to it by rail. One of its employees, plaintiff herein, was injured while removing drums from the car. Defendants' motions for nonsuit upon the ground of plaintiff's contributory negligence and assumption of risk were granted and he has appealed.

Plaintiff was a maintenance mechanic at the Dewey and Almy plant but during the eight years of his employment had been assigned to the loading and shipping of cars about a half day to a day a month and during that time had worked at the unloading of 20 or 30 cars.

He testified that empty drums such as these (3 feet high and 2 feet in diameter, weighing 110 to 125 pounds each) are customarily loaded upright in tiers, one tier above the other (a full car has three tiers), with a board across the doorway (nailed from the inside against the door post, which is of wood in contrast to the steel on the outside) opposite each tier, to hold the drums in.

When unloading such a car, the boards would be removed one at a time, the top one first. A ladder placed against the door of the car would be used to climb part way up to the level desired and the unremoved boards would be used to get high enough to reach the top drums. The men would climb up and roll the drums out onto a track system which joined with the plant conveyor, until they had an opening big enough to get into the car itself.

Upon the occasion here involved, plaintiff's foreman told him to work on the unloading of a certain boxcar. They had to pry the door open. The drums were up against it. So they got a piece of board and stuck it between the opening and kept prying the drums loose from the door so they could get the door open. When the door was pried open, it could be seen that there were no boards across the doorway. This was the first car plaintiff ever unloaded that did not have boards across the doorway. The first and second tiers of drums were standing upright. The first tier was packed loosely. The drums in the top row were not standing upright. They were lying down. They were badly scrambled. That was perfectly visible to plaintiff at the time the door was open. He was fully aware of that before he went into the car.

The method for the unloading of this car was different from what it had been on previous occasions. Plaintiff testified ". . . we couldn't unload it from the outside because the drums were pretty rickety and wobbly, and it was a hazard to attempt unloading it from the outside. The only way to unload it was to get inside up on top, find a safe place to stand and roll them out up on top." He used a ladder that was between 6 and 7 feet in length (it reached up to a point about two feet above the level of the floor of the car) to get as high as he could, then grabbed the side of the door and the door frame and pulled himself up and into the boxcar. The door opening was about 8 feet high. When he was up in the car he had "to figure out each move so I wouldn't get myself hurt. The car was in such a mess." He was fully aware of that when he went into the car, "it was not a safe

loaded car, I will tell you that." Asked whether he knew when he went up into the car whether he was putting himself into a position of danger, he said, "Yeah, I guess so. It wasn't the safest looking car that I have ever gone into," and that "there is danger in anything I guess you do."

He had rolled half a dozen drums out from the third tier when he was called to attend to a breakdown on a high-lift truck. It was his duty to respond to that call to fix the lift. He got out backwards by hanging onto the frame of the door, swinging himself around and putting his right foot on the top rung of the ladder. His right hand was on the edge of the doorframe, his left hand was around the door post and his left leg was hooked around the door post. He let his left hand go to get a lower grip so he could lower his left foot onto the ladder. He reached out and laid his hand on a second tier drum which was tipping over on him. He shoved the drum back in so it would not fall and knock him off. The result was that he lost the grip he had with his right hand and fell to the ground. The drum did not fall. He said that this drum tipped over the edge and would have "got" him if he had not shoved it back. He did not believe he moved that drum while he was in the car. He believed he moved the drum that was on top of it. He did not know of any other way he could have gotten out of the car from the third tier down to the ladder than the way he took.

He referred to the ladder he used as a "make-shift" ladder. He said "it wasn't a proper ladder to use." His employer had other types of ladders and longer ladders. With a longer ladder it would have been easier to climb in and out of that particular car. Asked if anything prevented him from making inquiry as to the whereabouts of another ladder or going and getting another ladder, he said "No, I usually get told to do a job and I try to do it to the best of my ability without asking too many questions." He used this ladder because it was out there for that purpose, the only one around there, and "when they unloaded these cars they use it. I was no different than anyone else." The ladder rested on solid ground and did not fall nor did it slip. It remained right where it was when he fell.

Plaintiff's foreman testified that he was present at the beginning of the unloading operation, but was not there when the accident happened. He was there to be sure that the men were being careful. He believed "they were handling it sufficiently not to have any accident at that time." He had dun-

nage boards that could have been used to shore up the doorway. He did not consider it necessary to do so. (No one asked plaintiff if it occurred to him that it might be desirable to place boards across the doorway, nor whether he knew that boards were available for such a purpose.)

We have a picture of a man who was faced with a situation quite different from that which normally confronted him when unloading a car. He adopted a method for unloading this car which, according to him, seemed suitable for getting the drums out with the minimum of risk. The mere fact that an accident did occur does not demonstrate as a matter of law that he acted negligently in the selection and use of that method.

The test to be applied in such a case as this we find well expressed in *Anthony* v. *Hobbie,* 25 Cal.2d 814, 818 [155 P.2d 826] : ". . . contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. [Citations.]"

When applying this test in this case we must bear in mind the fact that here the plaintiff had a function to perform, that of unloading the very drums which, allegedly, the shipper had negligently loaded and the carrier had negligently failed to inspect or had negligently transported. It is unlike the case of an invitee upon another man's land who encounters an obviously dangerous instrumentality and can avoid harm to himself by simply walking around it. "It has long been recognized that '. . . where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. [Citations.]' " (*Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 239 [282 P.2d 69]. See also *James* v. *Key System Transit Lines,* 125 Cal.App.2d 278, 281 [270 P.2d 116], where it appeared that "plaintiff's duties required him to cross" a strip of rough pavement and "he had no choice except to cross" it.)

We do not find any factors in this case which "point

unerringly'' to the conclusion of lack of due care on the part of the plaintiff.

■ Contributory negligence might be found in the failure to place boards across the doorway. However, the boards perhaps could not be readily fixed in place on the inside of the door frame. The drums pressed so closely to the door it had to be pried open. The boards could hardly be fastened on the outside because the outside walls of the car were of steel. Moreover, plaintiff's foreman, who had a great deal of experience in unloading boxcars, testified that such boards were not placed because he did not consider it necessary. Plaintiff might well be justified in relying on the foreman's superior experience and greater knowledge. (See *Hoogbruin* v. *Atchison etc. Ry. Co.*, 213 Cal. 582, 592 [2 P.2d 992] ; *Andre* v. *Allynn*, 84 Cal.App.2d 347, 352-353 [190 P.2d 949].)

■ Contributory negligence might be found in the use of a 6-foot ladder to ascend and descend from the car. Plaintiff testified, when asked why he did not use a different ladder, ''that ladder was out there for that purpose and that is the only one there was around there, and when they unloaded these cars they use it.'' The ladder extended about two feet above the level of the floor of the car. The car was about 10 feet high on the inside. Since the drums were three feet high, the level of the third tier could not have been more than four feet above the end of the ladder. It would not seem unreasonable for plaintiff to assume that entry and exit from the car could be safely made with the ladder that was used. Whether he should have used a longer ladder in the exercise of ordinary caution was a question for the jury.

■ Contributory negligence might be found in plaintiff's manner of exit. The same considerations would apply. Plaintiff testified that he knew of no other way to get out. (See *Rau* v. *Redwood City Women's Club*, 111 Cal.App.2d 546, 551 [245 P.2d 12].)

Placing his hand upon a drum which had begun to tip over and shoving it back into position, does not point unerringly to negligence. It appeared to plaintiff at the time that but for that act upon his part the drum would fall upon him with all its weight and bulk.

Since conflicting inferences are possible from the evidence concerning plaintiff's exercise of ordinary care or the lack of it, contributory negligence does not appear as a matter of law. It was error to order nonsuit upon that ground.

■ For like reasons the evidence does not show, as a matter of law, that plaintiff assumed the risk of harm to himself. Plaintiff was faced with a dilemma created by defendants' alleged negligence, the unloading of the very drums which allegedly had been negligently loaded. Under the circumstances of the case, it was for the triers of the facts to determine whether the measures plaintiff took to meet that situation constituted a voluntary assumption of the risks involved. In such a case the question is whether "plaintiff conducted himself as a reasonable and prudent person." (*DeGraf* v. *Anglo California Nat. Bank,* 14 Cal.2d 87, 100 [92 P.2d 899].)

■ "The defense of assumption of risk . . . will negative liability regardless of the fact that plaintiff may have acted with due care. (See Prosser on Torts [1941], p. 377.) ■ It is available when there has been a voluntary acceptance of a risk and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk. (See Rest., Torts, § 893.) ■ Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge, and there may be an assumption of the risk, but where it merely appears that he should or could have discovered the danger by the exercise of ordinary care, the defense is contributory negligence and not assumption of risk." (*Prescott* v. *Ralphs Grocery Co.,* 42 Cal.2d 158, 161-162 [265 P.2d 904]. See also *Hayes* v. *Richfield Oil Corp.,* 38 Cal.2d 375, 384-385 [240 P.2d 580]; *Hawk* v. *City of Newport Beach,* 46 Cal.2d 213, 218 [293 P.2d 48].)

■ Plaintiff testified that he guessed he was aware that he was putting himself in a place of danger, and that "[i]t wasn't the safest looking car that . . . [he had] ever gone into." This shows a knowledge of some risk, but not necessarily an appreciation of the extent of the risk. Plaintiff had been in the car 15 or 20 minutes before his attempted exit, and there is no testimony that any drums had fallen out during that time. Even if he initially might have believed that there was danger of falling drums from the lack of boards holding them in, the lack of any such result for a period of time might have lulled him into a momentary forgetfulness of the danger.

Moreover, it is not clear from the plaintiff's testimony what particular risk he appreciated. If defendants are to be relieved from liability on the ground of assumption of risk, the jury would have to find that the plaintiff appreciated the

danger from drums falling out the door, which was the particular risk, if any, which caused the plaintiff's injury. The testimony above quoted may refer only to the danger of falling within the car from the haphazard arrangement of the drums. The following testimony was given just before the part quoted above: "I [plaintiff] didn't do anything but find a footing so I could stand on up there and move what drums I did move. That took all the time I was up in there. I had to figure each move so I wouldn't get myself hurt. The car was in such a mess. Q. You were fully aware then of that, at the time you went into the car, is that correct? A. Yeah, it was not a safe loaded car, I will tell you that. Q. You knew at the time that you went into the car that you were putting yourself into a position of some danger, is that correct? A. There is danger in anything I guess you do."

Assumption of risk as a matter of law does not appear in this case. The danger was no more patently obvious to a person of average intelligence than that in *Prescott* v. *Ralphs Grocery Co., supra,* 42 Cal.2d 158, where the patron of a grocery store slipped and fell on a sidewalk on which there was "a lot of water," and the court reversed for erroneous instructions on assumption of risk; *Hawk* v. *City of Newport Beach, supra,* 46 Cal.2d 213, where a 17-year-old boy injured himself when he dived from a rock, apparently because of the shallow water surrounding the rock, and the boy did not know the depth of the water except that the greatest depth he encountered wading out to the rock was approximately up to his waistline; or *Erde* v. *City of Los Angeles,* 116 Cal.App.2d 565 [254 P.2d 110], where plaintiff was injured by a falling light standard after he noticed the shade was broken and in a position likely to fall and had asked that it be repaired.

Cases upon which defendants principally rely are distinguishable. In *Southern Ry. Co.* v. *Edwards,* 44 F.2d 526, and in *Fisher* v. *Minneapolis & St. L. Ry. Co.,* 199 F.2d 308, the injury occurred as a result of an obviously dangerous method of unloading poles which had been properly loaded. In *Fletter* v. *City & County of San Francisco,* 110 Cal.App. 2d 820, 824 [244 P.2d 59], the plaintiff's testimony was "subject to only one interpretation, that knowing of the existence of the opening, he purposely stepped across for a hand truck, misjudged the distance, and fell into the opening."

Defendants claim that the nonsuits can be sustained upon the ground of failure to prove that defendants owed a

duty to plaintiff. They are mistaken. That question was not before the trial court for consideration and action, nor is it before this court. Plaintiff had not completed his case as to defendants' responsibility when he rested and defendants moved for a nonsuit. Upon resting his case in chief, plaintiff's counsel did so conditionally. He said: "Now, Your Honor, we are prepared to rest except for the introduction of certain very brief testimony with respect to where these cars came from, by whom they were delivered and when they were taken off the siding, part of which will be covered by stipulation, perhaps all, and part by the introduction of a couple of documents . . . I would ask leave that I rest subject simply to being permitted to reopen to put in this small portion of evidence." This request was granted. The court later said, "Well, you have rested your case with the exception of certain documents?" Plaintiff's counsel replied that this was correct. Twelve minutes later the motions for nonsuit were made. Obviously, plaintiff had not "completed . . . the presentation of his evidence" on the question of defendants' responsibility. Not until "after" such completion would a motion for nonsuit on that ground be in order. (Code Civ. Proc., § 581c.) It was proper to consider the questions of assumption of risk and contributory negligence for it was manifest that plaintiff was not going to introduce any more evidence pertinent to those issues. Moreover, plaintiff makes no claim that the motions on those grounds were prematurely made. (See *Skelton* v. *Schacht Motor Car Co.*, 22 Cal.App. 144, 146 [133 P. 504]; *Dineen* v. *San Francisco*, 38 Cal.App.2d 486, 493 [101 P.2d 736].)

The contention is also made that this appeal should be dismissed because the notice of appeal was couched in terms of an appeal from a formal written judgment instead of the minute order which preceded it, although filed within 60 days of the entry of the minute order. It is clear that plaintiff seeks a review of the order of nonsuit, which is the judgment in a case such as this. (Code Civ. Proc., §§ 581c and 581d, construed in *Costa* v. *Regents of University of Calif.*, 103 Cal.App.2d 491, 492-494 [229 P.2d 867], and cases therein cited.) The notice of appeal was filed in ample time. No one has been misled. No prejudice to the defendants is involved. The notice should and will be treated as being from the appealable order and, therefore, effective. (See *Holden* v. *California Emp. etc. Com.*, 101 Cal.App.2d 427, 430 [225 P.2d

634] ; *Collins* v. *City & County of San Francisco,* 112 Cal.App. 2d 719, 722 [247 P.2d 362].)

The judgment is reversed.

Peters, P. J., and Bray, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 25, 1959.