[L. A. No. 3853.   Department Two.—March 9, 1917.]

## J. WALTER HUGHES, Respondent, v. WARMAN STEEL CASTING COMPANY (a Corporation), Appellant.

Negligence—Pleading.—Negligence may be charged in general terms, and a complaint is sufficient which alleges that what plaintiff claims was done by defendant was done negligently by him, and further shows that the negligence caused or contributed to the injury of the plaintiff.

Id.—Dangerous Method of Work—Sufficiency of Complaint.—In an action to recover for personal injuries to an employee in a foundry resulting from the negligence of the employer in failing to furnish him with suitable tools and appliances with which to perform the labor assigned him, the complaint is sufficient if it describes the method of doing the work, alleges that such method is dangerous, and describes in what respect it is dangerous, and further alleges that the defendant in adopting the method was negligent, and that as a result of such negligence the plaintiff was injured, describing the manner in which the injury occurred. Such allegations are of facts and not conclusions of law.

Id.—Safe Tools and Appliances—Method of Work Employed Elsewhere.—While an employer is only required to furnish such tools and appliances as are reasonably safe in pursuing the method of work he assigns his employees to perform, the fact that the method adopted by him in doing a certain kind of work is that usually employed elsewhere does not necessarily excuse him from adopting any other or safer method.

Id.—Reasonable Care in Adopting Method of Work.—The question always is, Did the employer exercise ordinary and reasonable care in adopting the method he set his employee to pursue in doing his work? In determining this the jury may take into consideration methods adopted elsewhere, but they are not controlling in the matter of reasonable care; that is to be determined from all the circumstances of the employment.

Id.—Contributory Negligence—Insufficient Plea.—The defense of contributory negligence is an affirmative one, and must be pleaded, and a mere averment that the injury to plaintiff was entirely caused by his own negligence is not a plea of contributory negligence.

Id.—Affirmative Plea of Plaintiff's Negligence—General Issue—Evidence.—Where the answer denies all negligence on the part of the defendant, a defense that the injury to the plaintiff was solely caused by his own negligence, though specially pleaded, was available under the general issue, and the evidence respecting it would

have to be considered with all the other evidence in the case in determining whether it justified a verdict for the plaintiff.

ID.—EVIDENCE OF SAFER APPLIANCES.—In such action it was proper to admit in evidence certain readily obtainable tools which would be suitable and less dangerous in doing the work than the appliances furnished the plaintiff for that purpose.

ID.—EXPERT EVIDENCE—POSSIBILITY OF BEING HIT BY FLYING NAIL.— The question whether or not it was possible for a foundryman, while working at the side of a casting in chipping nails therefrom, to be struck by a cut nail, is not a matter for expert evidence.

ID.—EMPLOYERS' LIABILITY ACT OF 1911—ASSUMPTION OF RISK.— Section 1 of the Employers' Liability Act of 1911 (Stats. 1911, p. 796), abolishing the defense of assumption of risk, applies to all actions by employees against employers where the negligence of the employer is the basis of the suit, irrespective of the election of the parties to come under the provisions of the act.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

William H. Fuller, for Appellant.

Joseph Scott, for Respondent.

LORIGAN, J.—This action was brought to recover damages for personal injuries to plaintiff, who had a verdict and judgment for three thousand dollars. Defendant appeals from the judgment and an order denying its motion for a new trial.

Several grounds are urged by defendant for a reversal.

1. It is insisted, first, that the court erred in overruling its demurrer to the complaint, which was made both general and special.

The complaint alleged that defendant conducted a foundry at Redondo Beach, California, and manufactured, among other things, steel castings, and the plaintiff was employed therein as a laborer; that a part of his duties consisted for a couple of hours a day in swinging a sledge or hammer to trim nails from steel castings in which, when molded, the heads of nails were imbedded, leaving the points and remaining parts of the nails projecting outward from the castings; that to

trim such nails it was customary at the plant of defendant
for one man to hold the point of a cold chisel against the
nails to be cut while another struck the chisel with a sledge
or hammer, cutting the nail and causing it to fly from the
casting; that said method of trimming nails from castings
was a dangerous method, well known to be such by defend-
ant, but which method defendant ordered plaintiff to use
without taking any means or steps to protect said plaintiff
from harm and injury; that the use of a heavy sledge, in-
stead of a lighter hammer, in such trimming, is dangerous,
and causes the nails to fly from said casting with greater
velocity than when a lighter hammer is used; that defendant,
with full knowledge of these facts, directed and caused plain-
tiff to use a sledge in performing such labor; that defendant
knew that the occupation of defendant was unsafe and
dangerous to him, but with full knowledge of this fact per-
mitted and caused plaintiff to continue said work without
using any means or protection to lessen said danger; that
plaintiff was an ordinary, and not a skilled, laborer, and
did not appreciate the real danger connected with his em-
ployment; that on April 9, 1913, when plaintiff was regu-
larly engaged in the performance of his duties in trimming
nails from said castings and in swinging a sledge-hammer for
that purpose in accordance with the order of defendant, and
was using due care, one of the nails cut from said casting flew
with great velocity therefrom, embedding itself in the left
eye of plaintiff, whereby the sight thereof was destroyed,
necessitating the removal of said eye; that said injury was
caused solely by the failure of defendant to provide a safe,
sufficient, and suitable place for plaintiff to work in, and a
failure of defendant to furnish plaintiff with safe and suit-
able tools with which to labor.

Error of the court in overruling the demurrer of defendant
is based on its contention that while the complaint charges
that defendant was negligent in providing a safe, sufficient,
and suitable place for plaintiff to work, and was further
negligent in providing plaintiff with safe and suitable tools
with which to labor, there are no averments of facts showing
in what particular the defendant was negligent in either re-
spect; that the allegation that the method adopted by defend-
ant for trimming nails from castings which plaintiff was
ordered to follow was dangerous is a conclusion of law, and

not an averment of any fact from which the court can determine whether the method of defendant was dangerous or not.

It is well settled in this state that negligence may be charged in general terms. It is sufficient to allege that what plaintiff claims was done by defendant was done negligently by him, and that it appears from the allegations of the complaint that the negligence caused or contributed to the injury of plaintiff. (*Smith* v. *Buttner,* 90 Cal. 95, 96, [27 Pac. 29]; *House* v. *Meyer,* 100 Cal. 592, [35 Pac. 308]; *Champagne* v. *A. Hamburger & Sons,* 169 Cal. 683, [147 Pac. 954].)

While the complaint in this case charged negligence on the part of defendant in furnishing plaintiff with a safe and suitable place to work, it is likewise charged that the injury he received was due to the negligence of the defendant in failing to furnish him with safe and suitable tools and appliances with which to perform the labor assigned him, and it is apparent that the particular negligence to which the allegations of the complaint were directed was of the latter character; that the negligence of the defendant consisted in requiring and directing plaintiff to use a dangerous and unsuitable method in trimming nails from castings. As to this, it will be observed from an examination of the matters in the complaint as we have epitomized them above that the method of trimming nails is described; it is alleged that this method is dangerous, and describes in what respect it is dangerous; alleges that defendant in adopting the method was negligent, and that as a result of such negligence plaintiff was injured, and describes the manner in which the injury occurred. None of these were conclusions of law, but were allegations of facts upon which negligence on the part of defendant is charged. The demurrer was properly overruled.

Its demurrer having been overruled, defendant answered, denying the material allegations of the complaint, and as special defenses set up, first, that any injury sustained by plaintiff was the proximate result of his own negligence and carelessness, particularly in standing in front of the casting which he was trimming instead of standing at the side, where, defendant alleged, he was ordered to stand; and, second, that the plaintiff entered upon the work of cutting said nails with

knowledge of the dangers, and hence assumed the risk incident to such work.

2. As to the alleged errors committed during the trial of the cause. The court denied a motion of defendant for a nonsuit made at the close of the evidence of plaintiff. We do not think it necessary to give this point any particular consideration. If there was evidence presented on the trial of the whole case to sustain the verdict rendered, it is immaterial as to the ruling of the court on the motion for nonsuit, and whether there was such evidence is one of the points made on this appeal next to be considered.

3. Now as to the claim that the evidence was insufficient to justify the verdict. As has been stated, the negligence complained of was in putting plaintiff to work cutting these nails from the castings without taking any measures or steps to protect him from harm and injury while doing so, and further, in not providing plaintiff with safe and suitable tools with which to work. The evidence shows that plaintiff and his companion were placed at such work by the manager of defendant and directed to use a sledge eight or ten pounds in weight to strike the cold chisel against the nails, principally six and eight penny nails, in some instance twenty penny spikes—with instructions to hit hard but to avoid shooting the nails in the direction of a window (broken), as they might hit the molders working there. When placed at work plaintiff was told to stand at the side of the casting and he would not be injured. In working under this method the severed nails would fly in all directions—sometimes twenty feet—"just go wild," as one witness described it; striking the windows and doors and walls of the working-room. It was in evidence that if instead of being required to use a heavy sledge the plaintiff had been furnished with a lighter hammer, the method would not have been so dangerous, as the nails would not fly with such force; that a net or shield or sacking placed against the direction the nail would fly would have removed the danger by retarding its flight, and that aside from this, certain cutting appliances —cutters and shears which were exhibited to the jury and introduced in evidence—could be readily obtained at small expense with which all these nails could be readily pinched or cut off flush with the casting—in effect, producing as clean and finished a job as that accomplished by the use of the

sledge and cold chisel and without any danger from the work. It was at the commencing of his work on a particular casting on April 9, 1912, that plaintiff was hurt.  The casting was on the ground, leaning up against an anvil, and it was immediately after the first nail was struck off from the casting by plaintiff, in pursuing the method directed with a sledge and cold chisel, that he felt the sting in his eye and pulled the nail out of it.  The result was the permanent loss of the left eye and the impairment of the vision of the other to an extent, as testified by plaintiff, that he is just able to get about.  It does not appear exactly how the nail came to hit the plaintiff.  It may have flown directly from the casting or rebounded from the anvil, which was near it, or from some other object in the room.  There was testimony introduced by defendant contradictory of the testimony of plaintiff and his witnesses as to essential issues in the case, it being testified to by the witnesses for defendant that the method used by it—the sledge and cold chisel—in cutting the nails from the castings was that adopted for similar work in foundries on this coast and in some of the eastern states where the witnesses had worked.

The contention of the defendant that the verdict was not sustained by the evidence is really based on the theory that when it is shown that a method adopted in doing a certain kind of work is that usually employed elsewhere in doing it, that the employer is excused from adopting any other or different method.  This is not the rule.  It is, of course, true that the employer is not bound to supply his employee with the latest, safest, and best tools or appliances that can be secured.  What he is required to do is to furnish such tools and appliances as are reasonably safe in pursuing the method of work he assigns his employees to perform.  But it is not a sufficient answer in an action for negligence for the employer to say that he uses the same method or ways used by employers elsewhere when as a reasonable man it is evident not only that the method so used is dangerous, but that by the exercise of ordinary care safer tools may be used in doing the work and a safer method adopted.  The question always is, Did the employer exercise ordinary and reasonable care in adopting the method he set his employee to pursue in doing his work?  In determining this the jury may take into consideration methods adopted elsewhere, but they are not

controlling in the matter of reasonable care; that is to be determined from all the circumstances of the employment— the tools or appliances used, the method pursued, the attendant risks; whether there are other tools and appliances in general use which are adapted to perform the work with a lesser or entire removal of danger. Having all these matters before it, it is for the jury to say whether the employer exercised ordinary care or not in pursuing the method whereby the employee was injured. In this case the jury has held that such reasonable care was not exercised, and, adopting as true, as it undoubtedly did, the testimony presented on behalf of the plaintiff, it cannot be said that their conclusion was not justified.

4. It is contended by defendant under its special defense interposed in that regard that the evidence shows that the injury to plaintiff was entirely caused by his own negligence. This, of course, is not a plea of contributory negligence on the part of plaintiff. Such a defense is an affirmative one, and must be pleaded. No attempt to plead it appears in this case. (*Crabbe* v. *Mammoth Channel G. Min. Co.*, 168 Cal. 500, [143 Pac. 714].) Defendant having in its answer denied all negligence on its part, this plea, though denominated a special defense, is simply an affirmative charge of negligence on the part of plaintiff which was available under the general issue without special plea, and the evidence respecting it would have to be considered with all the other evidence in the case in determining whether it justified a verdict for the plaintiff, which the jury of course did. This might dispose of this point made by defendant, but as its position under it will not involve much time to consider, we will take it up. In support of the special defense defendant insists that the evidence clearly showed that plaintiff's injury was proximately caused by his own negligence, and that he must have been standing and working, not on the side of the casting where he had been instructed by defendant to stand, but in front of the casting where it is always dangerous; that the evidence shows that the nails always fly straight out from the position in which the cold chisel is held, and therefore plaintiff must have been standing directly in front of the casting and in a position of danger from the flying nails. But the evidence shows no such clear or unquestioned condition as defendant claims. There was testimony, it is true,

introduced on the part of defendant that plaintiff was working standing in front of the casting at the time of his injury, but there was also testimony that plaintiff was not doing so, but was standing at the side of the casting and working there, as he had been directed to do, and that instead of its being true that the nails flew straight out from the casting, they flew in all directions. The jury doubtless, as they had a right to do, accepted this testimony on the part of plaintiff.

5. As to certain alleged errors of law committed by the court in the admission or rejection of testimony: It was not error for the court to admit in evidence certain appliances offered by plaintiff. These consisted of a pair of shears and a pair of clippers. The claim of negligence by plaintiff against defendant was that defendant failed to supply him with proper appliances and suitable tools to do the work assigned him. The offer of the shears and clippers was in connection with testimony showing that these tools could be readily obtained which would be suitable and less dangerous in doing the work.

Exception was taken to the ruling of the court sustaining objections to inquiries made of expert witnesses called by defendant as to whether it is "possible" or whether it is a "physical impossibility" for a nail flying from a casting to hit a man standing at the side of it. It is insisted by defendant that such testimony was admissible as on a question of "science, art, or trade" and provided for by subdivision 9 of section 1870 of the Code of Civil Procedure. We perceive no error in the ruling. All these witnesses were permitted to testify as to what was the effect of cutting nails as plaintiff was engaged in doing; in what direction they would fly, and whether from the observation of the witnesses or their experience they would fly in any other than a particular direction. It was not matter of expert evidence, however, whether it was "possible" or not for plaintiff to be struck by a cut nail while working at the side of a casting. That was not a question of "science, art, or trade." It was one of the essential facts to be determined by the jury, and to be determined not from the opinion of experts as to whether it was "possible" or not, but whether, in the judgment of the jury from all the evidence given in connection with the work, including the direction which the testimony showed the nails would or would not fly, the plaintiff could have received the injury, as he claimed he did, while standing on the side of the casting.

6. It is next insisted that the court erred in certain instructions to the jury. It is claimed that the effect of one of the instructions was to tell the jury that if defendant failed to furnish plaintiff reasonably suitable and safe appliances to do the work he was ordered to do, or with instruments in themselves unsafe either because other appliances to render them safe were not furnished with the tools, plaintiff was entitled to recover. But this does not fully state the instructions. They were more explicit. The court told the jury that it was the duty of the employer to furnish the employee suitable and reasonable tools to do the particular work he is engaged in, and that the servant has a right to rely on this duty being discharged by the employer; that the use of like tools in other establishments is a circumstance to be taken into consideration by them in determining the care which the employer used in that regard, but that it was not, however, the sole test; that the real test was whether they were such as a reasonably prudent and careful man under like circumstances and having a proper regard for the safety of his employee would have furnished. Further, that if the jury found that defendant had exercised such care as men of ordinary prudence and intelligence ordinarily exercised under like circumstances and conditions in view of the character of the work to be done, that defendant had done all that was required of him and plaintiff could not recover. If, however, they found that defendant failed to furnish suitable reasonably safe tools for the work plaintiff was put at, or ordered plaintiff to do it with instruments unsafe for the work either in themselves or because some other appliances or contrivances to render them safe were not furnished with them, and if, in so doing, defendant failed to use reasonable care for the protection of plaintiff and on account of such failure plaintiff was injured, plaintiff was entitled to recover. We perceive nothing wrong with these instructions. In fact, the complaint of defendant is not so much directed to an attack on the legal principles involved in the instructions as to a claim that there was no evidence in the case of negligence on the part of defendant to which they were applicable. But as we have heretofore discussed the sufficiency of the evidence and found it sufficient, nothing more need be said as to this point on the instructions.

As to a further instruction complained of respecting assumption of risk—a defense interposed by defendant: When the injury to plaintiff occurred on April 9, 1913, the Employers' Liability Act of 1911 (Stats. 1911, p. 796) was in force. Section 1 of that act provided (stating only its terms pertinent here) that in any action for personal injury sustained by an employee in the course of his employment in which recovery is sought on the ground of want of ordinary or reasonable care on the part of the employer, it shall be no defense that the employee either expressly or impliedly assumed the risk of the hazard complained of. The court in harmony with these provisions of the act instructed the jury that under said Employers' Liability Act, the defense of assumption of risk or hazards of the work did not apply; that it was no bar to recovery on account of injury caused by the use of unsafe tools or appliances that plaintiff merely with knowledge of their lack of safety accepted or continued the employment. The provisions of the Employers' Liability Act warranted this instruction by the court. This section 1 as to all defenses which are mentioned therein, including the defense of assumption of risk, declared rules of substantive law which applied in all actions brought by employees against employers. It is claimed by defendant that the act has no application between employers and employees, unless where both parties had elected to come under its provisions. There is nothing in this point. The act, as far as the defense of assumption of risk (the only one we are now considering) is concerned, applies to all employers and employees and in all actions where the negligence of the employer is the basis of the suit by the employee. As we have said, section 1 lays down rules of substantive law governing all actions by employees against employers for injuries resulting from the negligence of the employer. It is only as to other matters that the election of the parties to come within its terms have relation.

While other points are made by the defendant, we think it is unnecessary particularly to refer to them. We have examined them but do not perceive that any of them have merit sufficient to require discussion.

The judgment and order appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.