[S. F. No. 20294. In Bank. Dec. 31, 1959.]

MARY CHIYEKO INOUYE et al., Plaintiffs and Respondents, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant; TRUCK INSURANCE EXCHANGE, Intervener and Respondent.

Richard H. Peterson, John J. Briare, Richard A. Raftery, Henry J. LaPlante, Glenn West, Jr., and Campbell, Custer, Warburton & Britton for Appellant.

Eustice & Feeley, W. Gordon Eustice, Schofield & Cunningham and William F. Levins for Respondents.

PETERS, J.—Defendant appeals from a judgment entered in favor of plaintiffs and intervener in the amount of $84,968.38 in an action for wrongful death. The points raised on appeal are that the failure to instruct on assumption of risk constituted reversible error, and that the trial court committed reversible error in giving a certain formula instruction which did not include assumption of risk as one of the issues.

The facts, insofar as they are applicable to a determination of these points, are as follows:[1]

Plaintiffs are the wife and children of decedent. Decedent was employed as foreman on the fruit ranch of one William von Waaden, had been so employed for 10 years, and was thoroughly familiar with the premises and with the existence and location of the electric wires which caused his death. His fatal accident occurred while he was shaking walnuts, and the aluminum pole he was using became energized with electricity flowing in three overhead wires owned and maintained by defendant. It is admitted that the evidence supports the implied finding of the jury that those wires were maintained negligently by defendant. There were no eyewitnesses to the accident, but the witnesses who arrived immediately thereafter, together with the ascertainable physical facts provided the balance of the evidence.

---

[1]There is no contention that the evidence is insufficient to support the verdict. The recital of facts is limited to those matters deemed material to the questions of law involved on this appeal.

The pole used by decedent was 25 feet in length, and had a hook on the end farthest from the handle. It was found hanging from the lowest wire, at a point approximately 20 feet from the branches of the nearest walnut tree, with decedent lying unconscious on the ground immediately below. The open side of the hook was facing away from that tree, indicating that it had contacted the wire while moving in such direction. The wire had a bright copper (burned) spot at the point of contact, and also had a smaller spot of the same nature where it ran among the tips of the branches of the nearest tree. The branches at this point extended to a height of 28.38 feet above the ground, which was higher than the wire. Thus, the wire ran through an area where the tips of the branches of the tree were also located.

Defendant had customarily pruned the branches which interfered with its wires, but no such pruning had been done in the immediate vicinity of the accident in the past 12 months.

The wires, maintained by defendant, consisted of a span between two poles, the point of the accident being the approximate center of such span. The height of the lowest wire was approximately 38 feet at one end of the span and approximately 27 feet at the other. The lowest point of the wire, approximately where the accident occurred, was 26.2 feet from the ground.[2] Defendant had been requested to raise its wires and, although it raised some wires in the adjacent areas, it had done nothing in regard to this particular span.

Decedent had been instructed in (and according to the testimony of his employer he consistently followed) the customary procedures for shaking walnuts. Such procedures required the placing of the hook around a substantial branch, far removed from its tip end, and pulling the same to dislodge the nuts. The hook was not to be used to contact the tips or small branches, since they could not be so pulled, and it was not to be used to flail or beat the tree or its component parts.

Decedent was also instructed in the safety rules (contained in various codes and administrative orders) which prohibited a worker from thrusting a metal pole within 6 feet of these wires.

There was a sign posted on one of the poles in the immediate area bearing the warning: "Danger, High Voltage."

[2] Evidence regarding defendant's alleged duties regarding placement and maintenance of the wires and pruning of the trees, as well as its knowledge of the danger, was somewhat conflicting, but is not alluded to herein for the reason that the sufficiency of the evidence is conceded.

Based upon these facts, and conceivably because of the position in which the pole was found, plaintiffs contended that while decedent was properly using his pole, hooked into the lower portion of a strong limb, the upper reaches of that branch contacted the wire (thus causing the smaller burned spot on the wire) ; that such contact allowed sufficient current to run through the limbs and into the pole to give decedent a slight shock, thereby causing him to jerk backwards; that such jerk carried his pole to the position where it contacted the wire directly, causing decedent's electrocution. To support this contention in part, they relied upon the presumption that decedent was exercising ordinary care for his own safety and was obeying the law at the time of the accident.

Defendant's contention throughout the trial was that the position in which the pole was found indicated either that decedent had been standing afar, flailing at the tree with his pole too close to the wires, or that he was moving backwards away from the tree with his pole raised at the moment it contacted the wire.[3]

Appellant proposed instructions on assumption of risk.[4] They were refused by the trial court. The court did give full and complete instructions on contributory negligence, presumption of due care by decedent, presumption that decedent obeyed the law, momentary forgetfulness is not contributory negligence as a matter of law, and other allied subjects. There

---

[3]Although defendant continues to urge this contention on appeal, it does not claim that the jury, if properly instructed, could not have accepted plaintiffs' version of the accident.

[4]These instructions, Nos. 40 and 42, were proposed by defendant in the following language:

(40) "There is a legal principle commonly referred to by the term 'assumption of risk,' which now will be explained to you:

"One is said to assume a risk when he or she freely, voluntarily and knowingly manifests his or her assent to dangerous conduct or to the creation or maintenance of a dangerous condition, and voluntarily exposes himself or herself to the danger, or when he or she knows that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places himself or herself, or remains, within the area of danger.

"One who thus assumed a risk is not entitled to recover for damages which resulted from the dangerous condition or conduct to which he or she thus exposed himself or herself."

(42) "It should be noted that to bar recovery, assumption of risk must be voluntary. To be voluntary, these two factors must be present: First, the person in question must have actual knowledge of the danger. Second, he or she must have freedom of choice. This freedom of choice must come from circumstances that provide him or her a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose himself or herself to the danger in question."

is no claim of error in the giving of any such instructions. Some of the allied instructions which are pertinent to the discussion herein may be summariazed as follows:

When lawful employment requires that a person work in a dangerous location, or requires him to take risks which a reasonably prudent person would otherwise avoid, the necessities of such situation may lessen the caution required of him.

Whether or not it is negligence for a person to proceed in a dangerous situation of which he had previous notice is a question of fact; if he voluntarily and unnecessarily exposed himself to danger, he was negligent as a matter of law.

It is not necessary to warn a person of a known or obvious danger.

Violation of a statute creates a rebuttable presumption of negligence (in connection with instructions on Penal Code, section 385, and certain sections of the Electrical Safety Orders).

Decedent had a duty to use ordinary care for his own safety, including observation of the known or obvious dangers and perils.

Willful moving of the metal pole by decedent within six feet of the high voltage wires, if it occurred, and if it contributed to the accident, would bar recovery.

Knowingly and willfully placing oneself in obvious and known peril constitutes contributory negligence which bars recovery.

No error was committed in refusing the proposed instructions for the very good reason that the doctrine involved was never properly raised as an issue.

It is appellant's position that it properly raised the issue of assumption of risk in its pleadings, in the pretrial order, in its opening statement, and in the evidence.

In none of those phases of the proceedings was the doctrine mentioned as such. The pleadings merely mention the facts upon which the defense of contributory negligence is predicated. This is equally true of the pretrial order.

The language in the pretrial order relied upon by appellant is as follows:

"Defendant . . . contends . . . the sole cause of the accident was the actions of decedent . . . The line was in clear sight at the point at which contact was made . . . [T]he point at which the pole took contact was open in plain sight and deceased had been warned by the property owner of the presence of

the lines and that to come in contact with them would have very disastrous results.''

Obviously, such language, while it may hint at the doctrine, is at least equally susceptible of the interpretation that it refers to the defense of contributory negligence.

This is also true of the language used in the opening statement. The language relied upon referred to the warnings given to decedent, his knowledge of the facts, violation of the statutory requirements regarding working under power lines and concluded with the statement ''his death resulted from the wrongful conduct of Mr. von Waaden and himself.''

The evidence relied on is no stronger than the allegations above mentioned.

As already pointed out, at no phase of the proceeding did appellant mention the doctrine by name.

The most that can be said for the language on which appellant relies is that it raised an issue as to whether or not decedent, in light of the obvious danger and his knowledge thereof, was negligent in the manner in which he acted. This was simply a defense based upon contributory negligence. ▆ The law recognizes that the defenses of assumption of risk and contributory negligence are separate and distinct (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161 [265 P.2d 904]; *Mula* v. *Meyer*, 132 Cal.App.2d 279, 287 [282 P.2d 107]; 35 Cal.Jur.2d 814-816, § 267), and requires that to be available as a defense assumption of risk must be specifically pleaded (*Routh* v. *Quinn*, 20 Cal.2d 488, at p. 493 [127 P.2d 1, 149 A.L.R. 215]; see also discussion in 59 A.L.R.2d 239). ▆ While it is true that the unpleaded defense may be available in certain instances (such as where it appears from the facts alleged in the complaint, or where it has been accepted by both parties and the case tried as if the issue were pleaded), it is not available to defendant merely because the evidence introduced on the issues of negligence and contributory negligence would have been pertinent to the issue of assumption of risk had that doctrine been pleaded (*Lein* v. *Parkin*, 49 Cal.2d 397 [318 P.2d 1]). The language of the pretrial order and defendant's opening statement so clearly relate to the defense of contributory negligence that the rule of the Lein case is here applicable. Defendant does not point out any specific evidence which was introduced, with or without objection, which it claims to have been introduced solely for the purpose of a defense based upon assumption of risk. If such evidence had been presented, and a proper

motion made, it would have been within the discretion of the trial court to allow an amendment of the answer to conform to proof. Defendant does not urge that it made any such motion before the trial court.[5]

For the foregoing reasons it appears that the doctrine of assumption of risk was not properly raised as an issue in this case. ■ While it is true that it has been held that it is not necessarily error to instruct upon the unpleaded doctrine if contributory negligence has been pleaded (*Covely v. C.A.B. Construction Co.*, 110 Cal.App.2d 30 [242 P.2d 87]), it does not follow that it is error to refuse to instruct on the unraised issue.

■ Moreover, even if it was error to have refused the two proffered instructions, such error could not possibly have been prejudicial. This is so because although the court did not give the instructions proposed it did give other instructions that included every basic element of that defense. In other words, the jury was not only fully and correctly instructed on the doctrine of contributory negligence but it was also advised that plaintiffs could not recover if decedent's death was proximately caused by his negligent violation of certain specified safety statutes. The jury was instructed on decedent's duty to observe known or obvious dangers and perils, and to use ordinary care in regard thereto. It was also told that willful moving of the metal pole within six feet of the wire would (if it occurred and contributed to the accident) bar recovery. Finally, it was instructed that "*one who knowingly and willfully places himself in the way of an obvious and well-understood peril is guilty of contributory negligence which bars recovery for his injury or death.*" (Italics ours.)[6]

Appellant has not pointed to any element of the doctrine of assumption of risk that was not included in the instructions. Under such circumstances, the failure to give the instructions under discussion, even if error, was not prejudi-

---

[5]At the conclusion of the evidence defendant did make a motion to *amend the pretrial order,* which motion was denied. Such denial was within the discretion of the court. (*Granberg* v. *Turnham,* 166 Cal.App. 2d 390, 396 [333 P.2d 423].) It would appear that if defendant then believed that there was evidence offered on assumption of risk, it would have moved to amend its answer to conform to such proof.

[6]This instruction, given at the request of defendant, might have constituted error if verdict had been favorable to defendant. As given, it includes all elements of the doctrine of assumption of risk which are favorable to defendant, without including any of the safeguards designed for the benefit of plaintiffs.

cial. We have read the entire charge. It is full, fair and complete and presented to the jury every element of appellant's defense.

As its only other point on appeal defendant urges that a certain formula instruction by the court constituted error. The instruction complained of reads as .follows:

"The issues to be determined by you in this case are these:

"First. Was the Defendant negligent?

"If you answer that question in the negative, you will return a verdict for the Defendant. If you answer it in the affirmative, you have a second issue to determine, namely:

"Was that negligence a proximate cause of the death of the decedent?

"If you answer that question in the negative, Plaintiffs are not entitled to recover, but if you answer it in the affirmative, you then must find on a third question:

"Was the decedent negligent?

"If you find that he was not, after having found in Plaintiffs' favor on the other two issues, you then must fix the amount of Plaintiffs' damages and return a verdict in their favor.

"If you find that the decedent was negligent, you then must determine a fourth issue, namely:

"Did that negligence contribute in any degree as a proximate cause of his death?

"If you find that it did, your verdict must be for the Defendant, but if you find that it did not, and you previously have found that there was negligence on Defendant's part which proximately caused decedent's death, you then must fix the amount of Plaintiffs' damages and return a verdict in their favor. . . ."

The only attack on this instruction is that it purported to enumerate all the issues in the case but omitted the issue of assumption of risk. If that doctrine was not a proper issue in the case then, obviously, it was properly excluded. If the doctrine was involved then its exclusion from the formula instruction was not prejudicial for reasons already stated.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and White, J., concurred.

Appellant's petition for a rehearing was denied January 27, 1960.