[Civ. No. 35282. Second Dist., Div. Two. Dec. 28, 1970.]

WILLARD LEE EBERHARD, Plaintiff and Appellant, v.
VIGGO BRUHN, Defendant and Respondent.

## COUNSEL

Archbald, Zelezny & Spray, Joseph L. Spray and Edward L. Lascher for Plaintiff and Appellant.

Halde, Barrymore & Stevens, Tom Halde and Ronald C. Stevens for Defendant and Respondent.

## OPINION

**FLEMING, J.**—Eberhard was injured in a fire at his house, which broke out while an employee of Bruhn was installing a countertop in the kitchen. Eberhard sued Bruhn for negligence and breach of warranty, and a jury found in favor of Bruhn. On appeal Eberhard contends the jury was erroneously instructed in the law.

On the day of the fire Lykken, an employee of Bruhn, came to Eberhard's house to install a formica top on a counter next to a gas stove in the kitchen. After arranging his materials and preparing the surface of the counter for the formica Lykken opened a gallon can of Grip, a contact cement used to bind formica to other surfaces. An expert testified that Grip gives off highly inflammable vapors which possess an extremely low flash point. After Lykken brushed on approximately 10 strokes of Grip an explosion occurred, and everything caught fire, including his shirt. He shouted "fire" several times, ran from the kitchen through the hallway out the back door, and rolled on the ground to put out the fire in his shirt. He saw Eberhard come out of the house, also with clothing afire, and he then helped Eberhard put out the flames on his person.

Plaintiff theorized that the fire started when Grip's vapors were ignited by the gas stove's pilot light.

The defense pleaded contributory negligence and assumption of risk, and it attempted to establish that Eberhard had negligently or advisedly entered the kitchen during the fire and thereby contributed to or assumed the risk of his own injuries. Eberhard denied entering the kitchen, and he testified that when he heard Lykken shout for help he ran toward the kitchen, but as he reached the hallway he saw Lykken go out the back door, and he then followed the latter outside. At that point he discovered that he, too, was on fire. The defense produced evidence to show that Eberhard's shoes were badly burned and that a footprint had been seared onto the kitchen linoleum floor. Lykken testified he abandoned the can of Grip in the kitchen but that the can was later found outside the house.

At the hospital after the fire Eberhard was quoted as saying, "Why I picked up that damn bucket I'll never know."

 The court instructed the jury it could base negligence on lack of due care, or alternatively, on a violation of an industrial safety order (§ 4150 of tit. 8 of the Cal. Admin. Code).[1] The court instructed the jury that contributory negligence and assumption of risk were defenses to negligence, but it refused to instruct the jury that assumption of risk was not a defense to negligence based on a violation of a safety order. In that respect the court erred in its instructions. The defense of assumption of risk (see *Grey v. Fibreboard Paper Products Co.*, 65 Cal.2d 240, 243-246 [53 Cal.Rptr. 545, 418 P.2d 153]) is inapplicable when the action is based on a violation of a safety law intended to protect a class of which plaintiff is a member. (*Finnegan v. Royal Realty Co.*, 35 Cal.2d 409, 430-431 [218 P.2d 17]; *Mezerkor v. Texaco, Inc.*, 266 Cal.App.2d 76, 98 [72 Cal.Rptr. 1, 639].) The benefit of safety orders extends to the general public in places of employment (*Porter v. Montgomery Ward & Co.*, 48 Cal.2d 846, 849 [313 P.2d 854]), and where an owner of real property contracts to have work done on his property, the property becomes "a place of employment" (Lab. Code, § 6302; *O'Melia v. California Production Service, Inc.*, 261 Cal.App.2d 618, 626 [68 Cal.Rptr. 125]). Consequently, work performed at an owner's house may be entitled to the protection of pertinent industrial safety orders. (3) Failure to give the requested instruction was prejudicial error, since the evidence did not strongly favor either side and we cannot tell from the general verdict on what theory the jury relied.

 We note that plaintiff was allowed to proceed against defendant on a breach of warranty theory, the "warranty" being the contractual obligation "to perform the work undertaken with care, skill, and in a good workmanlike manner." As a consequence instructions to the jury became unduly complex and may have brought about confusion in the minds of the jurors. In our view the theory of warranty added nothing to the case against Bruhn, since under either negligence or warranty the jury was still required to determine the scope of Bruhn's legal duty and whether that

---

[1] "4150. *Open Tanks, Vats and Containers Containing Flammable Liquids.* (a) Where flammable or combustible liquids are used, handled, or processed in open containers of more than one-half (½) gallon capacity in temperatures above their flash points, adequate extinguishing facilities shall be provided. These may be either—

"(1) Substantial covers arranged to close automatically or manually in case of fire, or

"(2) Appropriate extinguishing equipment, either manually or automatically operated, or both.

"Where covers or other devices are manually operated, they shall be so arranged that they can be operated, in case of fire, without exposing any employee to danger."

duty had been breached. The term warranty has acquired special significance in products liability law but precedents from that field are inapposite here, since the cause at bench does not concern a defective or unfit product and does not involve a contract to insure or indemnify against loss. Essentially, it charges no more than carelessness in the use of a product and is thus founded on lack of due care in the performance of an act. The applicable law on this point has been summarized in *Eads* v. *Marks,* 39 Cal. 2d 807, 811 [249 P.2d 257], where in analyzing an action for personal injuries for negligence in the delivery of milk the court said: "The contract [specifying the manner of the delivery] is of significance only in creating the legal duty, and the negligence of the defendant should not be considered as a breach of contract, but as a tort governed by tort rules. (*Rushing* v. *Pickwick Stages System,* 113 Cal.App. 240 [298 P. 150]; *Basler* v. *Sacramento etc. Ry. Co.,* 166 Cal. 33 [134 P. 993].) As was said in *Peterson* v. *Sherman,* 68 Cal.App.2d 706, 711 [157 P.2d 863]: 'It has been well established in this state that if the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu but if it arises *from a breach of duty growing out of the contract* it is ex delicto. . . .' (See also, *Jones* v. *Kelly, supra,* 208 Cal. 251, 254-255 [280 P. 942].) Where the cause of action arises from the breach of a contractual duty, the action is delictual notwithstanding that it also involves breach of contract." In *Heyer* v. *Flaig,* 70 Cal.2d 223, 227 [74 Cal.Rptr. 225, 449 P.2d 161], a legal malpractice case, the court said with respect to an asserted cause of action based on contract: "This latter theory of recovery, however, is conceptually superfluous since the crux of the action must lie in tort in any case; there can be no recovery without negligence."

On retrial submission of the cause to the jury should be limited to the theory of and instruction on negligence. (*Eads* v. *Marks,* 39 Cal.2d 807 [249 P.2d 257]; *Rubino* v. *Utah Canning Co.,* 123 Cal.App.2d 18 [266 P.2d 163].)

The judgment is reversed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied January 26, 1971.