[Civ. No. 11964. Fourth Dist., Div. Two. Oct. 27, 1972.]

ADALBERTO FONSECA, Plaintiff and Appellant, v.
COUNTY OF ORANGE, Defendant and Respondent.

## COUNSEL

Hidalgo, Aranda & Garcia and Manuel Hidalgo for Plaintiff and Appellant.

Garrett & Dimino and Franklin J. Dimino for Defendant and Respondent.

## OPINION

KERRIGAN, J.—Plaintiff sustained permanent injuries to his left arm when he fell from the Warner Avenue Bridge being constructed across the Santa Ana River in Santa Ana. At the time of the fall, plaintiff was employed as a cement finisher for the bridge builder, Lomar Construction Company. Lomar Construction had contracted with the defendant, County of Orange, to erect the bridge. The fall occurred on January 5, 1970, when plaintiff slipped on some wet, excess cement as he was doing finish work on the concrete deck of the bridge at a height of 20 feet or more above the dry riverbed. No scaffolding or railings had been installed around the perimeter of the bridge for the protection of workmen as required by law. Plaintiff received workmen's compensation benefits for the injuries sustained.[1] In addition, he sued the County of Orange in its capacity as owner of the bridge and employer of the bridge contractor.

The case was tried by jury. During its deliberations, the jury requested the rereading of instructions on the doctrine of contributory negligence and also the rereading of certain testimony relating to the issue of contributory negligence. The jury then returned with a unanimous defense verdict.

In response to special interrogatories submitted by the court, the jury also found that plaintiff's employer, Lomar Construction, violated certain state safety orders requiring the installation of railings on construction jobs where workers were required to work at heights in excess of 7½ feet above ground level and scaffolding at heights above 15 feet, and that said violations were the proximate cause of the plaintiff's injuries.

Plaintiff's motion for judgment notwithstanding the verdict and motion for a new trial were denied, and he appeals from the judgment entered upon the verdict.

[1]Lomar Construction Company's compensation carrier filed a lien claim for the benefits paid plaintiff.

His attack on the judgment is stated in varying ways but takes the following form:

(1) The county was vicariously liable as a matter of law for the negligence of its contractor; and

(2) The court erred in instructing on the doctrine of contributory negligence.

Plaintiff initially contends that the county was vicariously liable as a matter of law for the bridge builder's negligence. In support of his argument, plaintiff maintains that bridge construction can be a highly dangerous undertaking if special precautions are not taken; that such precautions include the installation of railings on jobs over 7½ feet in height and scaffolding on jobs over 15 feet; that such precautions were not taken by the defendant's contractor and the jury so found; consequently, the trial court erred in denying the motion for judgment notwithstanding the verdict.

■ The employer of an independent contractor is ordinarily not liable to third parties for the contractor's negligence. (*Green* v. *Soule* (1904) 145 Cal. 96 [78 P. 337].) However, the general rule is subject to exceptions of such magnitude as to leave only a small area in which the general rule operates. (Rest.2d Torts, § 413 et seq.; 2 Witkin, Summary of Cal. Law (1960) Torts, § 310, p. 1506.) In fact, the exceptions have almost emasculated the general rule. (2 Harper & James, Torts (1956) § 26.11; *Widman* v. *Rossmoor Sanitation, Inc.* (1971) 19 Cal.App.3d 734, 743 [97 Cal. Rptr. 52].)

In recent years, a new concept has been formulated constituting an exception to the general rule granting immunity to the employer of an independent contractor. This exception finds expression in section 416 of the Restatement Second of Torts and depends on the type or kind of work undertaken by the contractor in behalf of the owner or employer. This section provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to *others* unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." (Italics supplied.) ■ An employee of an independent contractor comes within the word *others* as used in section 416 of the Restatement. (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 254 [66 Cal.Rptr. 20, 437 P.2d 508].)

In the case under review, there was evidence establishing that cement work being done on the deck of a bridge at a height in excess of 20 feet was a highly dangerous activity in the absence of precautionary measures. Under the contract between the defendant (employer) and the bridge builder (contractor), the latter agreed to construct the bridge in a safe manner in accordance with state safety orders. The evidence establishes that the defendant's contractor violated the construction safety orders issued by the State of California, Division of Industrial Safety, by failing to install scaffolding and railings. (Tit. 8, art. 16, §§ 1620, 1621; tit. 8, art. 21, § 1637.) The court herein instructed the jury on the liability of an owner who employs an independent contractor to perform dangerous work. (BAJI No. 13.21.) It also instructed the jury that railings were required on construction jobs being performed at a height in excess of 7½ feet and scaffolding at heights above 15 feet, and that the contractor's failure to provide scaffolding and railings constituted negligence per se. (BAJI No. 3.45.) Based on the foregoing evidence and instructions, the jury determined that Lomar Construction was negligent and that such negligence proximately caused plaintiff's injuries.

In moving for judgment notwithstanding the verdict, the plaintiff argued in the trial forum that the jury's special verdict (answers to special interrogatories) finding the contractor (Lomar Construction) negligent in causing plaintiff's injuries was inconsistent with its general verdict in favor of the employer (Orange County). In effect, the same argument is again advanced on appeal, to wit, that the county was vicariously liable as a matter of law in view of the jury's findings of liability on the part of its contractor.

The argument has integrity if plaintiff was free of contributory negligence. Contributory negligence was raised as a defense in the county's answer to plaintiff's complaint. Evidence was presented, and the argument was made, that plaintiff had considerable experience in cement work and should have refused to start work when he observed the lack of scaffolds and railings. The court instructed the jury that the plaintiff was entitled to a verdict against the defendant (Orange County) if its contractor (Lomar Construction Company) was negligent and such negligence was the proximate cause of injury to the plaintiff, *provided that plaintiff was not contributorily negligent.* (BAJI No. 3.01.)

Turning to the evidence presented at trial, the record reflects the following facts: Plaintiff was born in October 1922; while he enjoyed a limited formal education (second grade), he had spent a good part of his adult life in the construction field; on several occasions, he had been employed

as a working foreman, and, in such capacity, had received safety pamphlets containing construction safety orders; a few days prior to the accident, he was working as a cement foreman for another employer; a Lomar Construction Company representative contacted his regular employer and requested the services of a cement finisher for one day; inasmuch as plaintiff's regular employer did not require his services at that particular time, he consented to plaintiff's working on the Warner Avenue Bridge job; on Monday, January 5, 1970, plaintiff arrived at the job site at 6:45 a.m. and met the county engineer assigned to the bridge job; while plaintiff testified that he told the county engineer that scaffolding and railings should be installed around the perimeter before he proceeded with the cement work, the county engineer said he did not recall whether plaintiff made any protest; in any event, plaintiff proceeded to work on the deck; about 1 p.m. that afternoon, he slipped on some wet cement and fell. From all the evidence, the sole reason for the fall was the contractor's failure to install scaffolding and railings.

Inasmuch as the court instructed the jury over objection on the defense of contributory negligence, the critical issue on appeal is whether the instruction was proper.

■ Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause, with the negligence of defendant, in bringing about the plaintiff's harm; the amount of care required of a plaintiff is that which would be exercised by a person of ordinary prudence in the same circumstances; and when a person must work under unsafe or dangerous conditions, the amount of care he is required to exercise for his own safety may be less than would otherwise be required because of the necessity of giving attention to his work. (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 500-501 [102 Cal. Rptr. 795, 498 P.2d 1043]; see *Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 239 [282 P.2d 69]; *McDonald* v. *City of Oakland* (1967) 255 Cal.App.2d 816, 827 [63 Cal.Rptr. 593].)

■ While contributory negligence has been eliminated entirely as a bar to recovery in negligence actions arising from violations of safety regulations or orders in some jurisdictions (see *Alber* v. *Owens* (1967) 66 Cal.2d 790, 798 [59 Cal.Rptr. 117, 427 P.2d 781]), in California, contributory negligence is available as a defense to the workman's action. (*Gyerman* v. *United States Lines Co., supra,* 7 Cal.3d 488, *Alber* v. *Owens, supra,* 66 Cal.2d 790, 792, 798; *Mason* v. *Case* (1963) 220 Cal. App.2d 170, 177-179 [33 Cal.Rptr. 710]; *Maia* v. *Security Lumber & Concrete Co.* (1958) 160 Cal.App.2d 16, 20 [324 P.2d 657].)

■ On the other hand, assumption of risk has been barred as a defense in suits for negligence by workers against their employers (Stats. 1911, ch. 399, p. 796; Lab. Code, § 2801; *Hughes* v. *Warman Steel Casting Co.* (1917) 174 Cal. 556, 565 [163 P. 885]), and the rule has been extended to reach all cases of violation of safety statutes or safety orders (*Finnegan* v. *Royal Realty Co.* (1950) 35 Cal.2d 409, 430-431 [218 P.2d 17]; *Widman* v. *Rossmoor Sanitation, Inc., supra,* 19 Cal.App.3d 734, 749; *Eberhard* v. *Bruhn* (1970) 13 Cal.App.3d 836, 839 [91 Cal.Rptr. 915]; *Maia* v. *Security Lumber & Concrete Co., supra,* 160 Cal.App.2d 16, 20), including those where the defendant is not an "employer" within the meaning of section 2801 of the Labor Code.[2] (*Mason* v. *Case, supra,* 220 Cal.App.2d 170, 177, 180.)

The reason for the rule that assumption of risk is not available as a defense in such situations has been expressed in the following terms: "Where an employee sues for injury caused by violation of a safety statute or safety order, public policy insists that the plaintiff's acquiescence or knowledge should not insulate the defendant from liability for his violation. The rationale is that the employee is in a weak economic position, that he is unable to risk refusal to work in an unsafe place or with an unsafe appliance, hence should not be held to the penalty imposed on one who acquiesces in a danger." (*Mason* v. *Case, supra,* 220 Cal.App.2d 170, 177.) As has been eloquently stated, the workman has no alternative but the loss of his livelihood; it is his poverty and not his will which consents, and economically he is no more free to leave his employment than a soldier or a sailor. (*Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409, 431.) The same policy forbids that the duty which the defendant owes to the plaintiff should be waived by plaintiff's mere passive acquiescence, even though with knowledge of the infraction of the safety order. (*Ibid.;* see Prosser, Torts (3d ed. 1964) § 67, pp. 468-469.)

■ It has been repeatedly noted that contributory negligence and assumption of risk are separate and distinct defenses. (*Gyerman* v. *United States Lines Co., supra,* 7 Cal.3d at 498, fn. 10; *Grey* v. *Fibreboard Paper Products Co.* (1966) 65 Cal.2d 240, 245 [53 Cal.Rptr. 545, 418 P.2d 153]; *Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777]; *Inouye* v. *Pacific Gas & Electric Co.* (1959) 53 Cal.2d 361, 367 [1 Cal.Rptr. 848, 348 P.2d 208].) Assumption of risk involves the negation of defendant's duty; contributory negligence

---

[2]The County of Orange, the sole defendant in this case, is *not* an "employer" within the meaning of section 2801. (See *Mason* v. *Case,* 220 Cal.App.2d 170, 180 [33 Cal. Rptr. 710].)

is a defense to a breach of such duty; assumption of risk may involve perfectly reasonable conduct on plaintiff's part; contributory negligence never does; assumption of risk typically embraces the voluntary or deliberate incurring of known peril; contributory negligence frequently involves the inadvertent failure to notice danger. (2 Harper & James, Torts, *supra* (1956) § 22.2, p. 1201; see *Mason* v. *Case, supra,* 220 Cal.App.2d 170, 177.)

The courts have frequently recognized that there is an area of overlap between the two doctrines, so that identical facts may give rise to both defenses. (*Grey* v. *Fibreboard Products Co., supra,* 65 Cal.2d 240, 245-246; *Inouye* v. *Pacific Gas & Electric Co., supra,* 53 Cal.2d 361, 368; *Austin* v. *Riverside Portland Cement Co., supra,* 44 Cal.2d 225, 235-236.) The overlap has been described as follows: "[T]he plaintiff's conduct in encountering a known risk may be in itself unreasonable, because the danger is out of all proportion to the advantage which he is seeking to obtain. . . . If that is the case, his conduct is a form of contributory negligence, in which the negligence consists in making the wrong choice and voluntarily encountering a known unreasonable risk. In such cases, it is clear that the defenses of assumption of risk and contributory negligence overlap, and are as intersecting circles, with a considerable area in common, where neither excludes the possibility of the other." (Prosser. *supra,* § 67, p. 451.)

The facts of this case fall squarely within the area of the "overlap." All of the elements of assumption of risk are present. Fonseca's undisputed testimony shows that he had actual knowledge of the danger, appreciated the nature and magnitude thereof, and voluntarily went to work on the bridge despite the danger. (See *Carr* v. *Pacific Tel. Co.* (1972) 26 Cal. App.3d 537, 542 [103 Cal.Rptr. 120]; *Vierra* v. *Fifth Avenue Rental Service, supra,* 60 Cal.2d 266, 271; *McDonald* v. *City of Oakland, supra.* 255 Cal.App.2d 816, 828.) Such conduct, if reasonable, constitutes assumption of risk, not contributory negligence, and may not be asserted as a defense in a suit for negligence based on the violation of a safety statute or safety order. (See *Mason* v. *Case, supra,* 220 Cal.App.2d 170, 177.) Conversely, if the conduct be deemed unreasonable, it constitutes both assumption of risk and contributory negligence and, as the latter, may be asserted. (*Ibid.* pp. 177-179.) Normally, whether or not conduct of a plaintiff was unreasonable, so as to be classified as contributory negligence barring recovery for his employer's negligence, is a question for the trier of fact. (*Gyerman* v. *United States Lines Co., supra,* 7 Cal.3d 488, 500; *Finnegan* v. *Royal Realty Co., supra,* 35 Cal.2d 409, 429.) But the policy of the safety statutes and safety orders is to protect workmen whose un-

equal economic power prevents them from protecting themselves. This policy would be negated by a finding that behavior such as that of plaintiff in this case was unreasonable.

In *Perry* v. *Angelus Hospital Association* (1916) 172 Cal. 311 [156 P.2d 449], a negligence suit based on a non-statutory safety violation, the following instruction to the jury was held proper: " 'The court instructs you that the plaintiff's continuing to work on defendant's mangle, after being warned of the dangerous character of the machinery, was not an act of contributory negligence on her part, nor was she guilty of contributory negligence by reason of continuing to feed into the mangle the articles of laundry to be ironed by the mangle, after getting her fingers pinched in the rollers of the mangle. . . .' " (P. 316.) In holding the instruction valid, the court reasoned that the issue was whether or not the plaintiff's negligence contributed to the injury complained of; this question depended on what occurred at the time of the injury and what she did at that time, if anything, tending to cause it; her previous conduct in continuing in service, after being warned that there was danger, might have had some tendency to show that she assumed the risk, if that defense had been available to the defendant, but it had no tendency to show that she was careless in manipulating the mangle in its dangerous condition.

 In the case under review, there was no evidence of any conduct on plaintiff's part which could be classified as negligent, i.e., that plaintiff performed his cement duties in a careless or reckless manner. The only dereliction attributed to plaintiff was in working despite the known danger. This may be only characterized as assuming the risk incidental to the bridge builder's violation of safety orders.

 Consequently, we hold that it is not unreasonable and not contributory negligence for a worker to continue work despite his employer's pre-existing violation of safety orders, whether or not the worker recognizes and appreciates the hazard. By our holding we do not eliminate contributory negligence as a defense in actions arising from a violation of safety orders. We merely limit its scope in deference to the enlightened policy factors underlying safety orders.[3]

 The verdict in this case was obviously based on a finding of con-

---

[3]Parenthetically, it should be observed that the Supreme Court has intimated it might re-examine, in a proper case, the integrity of the rule that contributory negligence is a valid defense in an action grounded upon a violation of a safety statute or order. (See *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 770, fn. 14 [91 Cal.Rptr. 745, 478 P.2d 465].)

tributory negligence. At the defendant's request, and over plaintiff's objection, the court instructed the jury on contributory negligence. During their deliberations, the jurors requested the court to "Define contributory negligence as applied to this case." The jury specifically found, in response to special interrogatories, that Lomar Construction (the contractor) violated safety orders and that the violations were the proximate cause of plaintiff's injuries. The jury was instructed that plaintiff was entitled to a verdict against the defendant if it found that the contractor's negligence proximately caused his injuries and that the plaintiff was not contributorily negligent. (BAJI No. 3.01.) Since plaintiff's behavior in working despite the safety violation was not unreasonable, and since the record contains no evidence of any other behavior by him that could be characterized as negligent, the court erred in rendering the contributory negligence instruction. In view of the jury's inquiries and findings, the instruction must be deemed prejudicial.

The judgment is reversed.

Gardner, P. J., and Gabbert, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 20, 1972.