SCHOTTKY, J.
 

 Dean Lokey commenced an action against Pine Mountain Lumber Company to recover damages for injuries sustained when he was struck by a log which fell from a truck. The jury rendered a verdict in favor of plaintiff. Defendant’s motion for a new trial was denied and this appeal is from the judgment entered on the verdict.
 

 In arguing for a reversal of the judgment appellant urges a number of contentions, but before discussing these we shall give a brief summary of the evidence as shown by the record, viewing it, as we must, in the light favorable to the respondent.
 

 
 *525
 
 Dean Lokey was a logging truck driver employed by Brie Garoutte. On December 4, 1959, Lokey drove a truck load of logs from the vicinity of Yreka Mountain to the mill of the Pine Mountain Lumber Company. Garoutte and Luther Nichols loaded the logs on the truck. After most of the logs were placed inside the bunks of the truck, two gut wrappers were placed around the load. Then two short peaker logs were loaded end to end on top of the load. Two wrappers were placed over the front peaker log and fastened to the front bunk. The rear peaker log was tied down in the same way. Lokey then drove to the Pine Mountain mill. His load was scaled and he drove to the “cold deck” where the logs were to be unloaded. At a signal from the operator of the crane which was used to unload the logs he stopped his truck and removed the two top wrappers from the front log. He then went to the front of the truck and coiled the wrappers. Mr. Besoain, who was the operator of the crane, started to remove the peaker log. He grabbed it several times and picked it up, but it slipped out of the tongs and fell back on the load. Finally, he managed to get the grapple to hold one end of the peaker log and rolled it off of the left side of the truck—the side away from the crane. It landed about three feet from the truck and parallel to it. Lokey then proceeded to take off the gut wrappers. He looked at the load which seemed to be proper. As he unfastened the binder on the gut wrapper there was no indication that the load was loose. After unfastening the wrapper he removed the binder and threw the gut chain under the truck where it caught in the reach or tongue of the trailer. He looked up at the load and went under the truck to throw the wrapper off of the reach, and after doing so he withdrew from the underside of the truck. His exit was on the same side he had entered. As he came out he looked up and saw that a log' was commencing to roll and he immediately went back under the truck. The rolling log hit the peaker log which was lying parallel to the left side of the truck and then glanced off and struck Lokey. As a result he incurred severe injuries. No one knew what caused the log to fall. The trial judge upon the hearing of appellant’s motion for a new trial stated that the most probable of any theory suggested was “That the log fell because the defendant’s employee battered the load with the bigger log that he tried initially to remove.”
 

 ■ Appellant’s first contention is that Lokey was guilty of contributory negligence as a matter of law.
 

 
 *526
 
 Appellant quotes and predicates its argument upon subdivision (f) of section 5326, title 8, of the California Administrative Code, dealing with logging and sawmill safety orders. We quote from the section as follows:
 

 “Log Dumps, Ponds, and Other Unloading Facilities.
 

 “(a) Log dumps, ponds, and other unloading facilities, when used after dark, shall have illumination which is adequate to secure the safety of the employees.
 

 “(b) Jill-poking of cars shall be done only at permanent locations, properly equipped.
 

 “(e) The top of the brow log, where used, shall not be more than nine inches (9") below the truck or car bunk level, nor shall it be a greater distance than fourteen inches (14") from the side of the truck or car when it is in position for dumping logs.
 

 “(1) All employees are prohibited from going between a brow log and the load of logs at any time.
 

 “ (2) All employees shall remain in the clear until moving equipment has come to a complete stop.
 

 “ (d) Where logs are unloaded into rollways, sufficient space shall be provided between the top of the skids and the ground or deck to accommodate the body of a man.
 

 “(e) All log dumps shall be kept reasonably free of bark and other debris.
 

 “(f) When dumping, transferring, or unloading logs from trucks, a positive safeguard shall be used on the side from which the binders and/or chocks are loosened, to prevent any logs from falling while they are being released.
 

 ( Í
 

 “
 
 (k) Engineer or operator shall determine that all employees are in the clear, and shall have received a signal from the dump man before proceeding to unload the logs.”
 

 Appellant contends that Lokey by unfastening the binders on his safety log without the use of any safety device whatever violated subdivision (f) of the safety order. Appellant concedes that it had the obligation to furnish the safeguard. It is clear that it is improper to loosen binders without the use of a positive safeguard. Would the fact that Lokey did so mean that he would be precluded from recovering?
 

 Appellant relies on a statement in
 
 McCaughan
 
 v.
 
 Hansen Pacific Lumber Co.,
 
 176 Cal.App.2d 827 [1 Cal.Rptr. 796], at page 832, for the proposition that Lokey was bound to obey subdivision (f) of section 5326 and that his failure to do so
 
 *527
 
 constituted contributory negligence as a matter of law. This statement reads:
 

 “Hansen Pacific contends that the safety order instructions we have quoted were erroneous in that they make it appear that the safety orders applied only to Hansen Pacific and its employees. While we think it is clear that McCaughan was governed by the safety orders which appear to have been intended for the benefit of all those in the logging industry engaged in the operation of unloading logs from trucks, we do not think that Hansen Pacific can properly complain, as it does, that undue emphasis was placed upon the duties of Hansen Pacific under the safety orders. It was the primary duty of Hansen Pacific to furnish requisite safety appliances for use in unloading, while McCaughan’s duties were negative in that respect. He, of course, could not furnish the appliances nor was he required to do so. At most he was required by the safety orders, so far as applicable to him, to take off the binders under safety conditions furnished by the requisite equipment required of Hansen Pacific. Furthermore, no specific instruction was requested especially directing the jury’s attention to the duties of McCaughan with relation to safety orders. Hansen Pacific claims that it gave the court opportunity to correctly instruct the jury in this respect by requesting BAJI Number 149 which would have told the jury that if
 
 a party
 
 to the action violated the safety orders a presumption arose that in so doing he was acting negligently; that the presumption was not conclusive and could be overcome by other evidence showing that under all the circumstances the conduct in question was excusable. This instruction would not have dispelled any impression the jury might have gotten that Hansen Pacific alone was bound by the safety orders, for it appears directed more to a permissible rebuttal defense by Hansen Pacific if the jury concluded it had violated the safety orders. Furthermore, the instruction proceeded to state that a violation of a safety ordinance was excusable so as to overcome the presumption if the evidence would support a finding that the violation resulted from causes beyond the control of the person charged with the violation. This part of the instruction was not correct.
 
 (Alarid
 
 v.
 
 Vanier,
 
 50 Cal.2d 617, 624 [327 P.2d 897].) The court was under no duty to correct it.
 
 (Shaw
 
 v.
 
 Pacific Greyhound
 
 Lines, 50 Cal.2d 153, 158 [323 P.2d 391].)’’
 

 It is clear that any statement as to the duties of an employee was unnecessary to the decision and obiter dictum. The opinion
 
 *528
 
 does hold that it is the duty of the employer (and in this case as shall be pointed out later appellant was an employer) to furnish the safety devices. But the opinion does not hold that the failure of an employee to obey subdivision (f) is negligence. Moreover, it is to be noted that the
 
 McCaughan
 
 opinion states that “McCaughan’s duties were negative” with respect to the required safety appliances, whereas “It was the primary duty of Hansen Pacific to furnish” them.
 

 We then must decide if subdivision (f) was directed to Lokey. Section 5326 prescribes the rules applicable for log unloading facilities. Certain of these are specifically directed toward the employee. For example, all employees are prohibited from going between a brow log and a load of logs, and all employees are instructed to remain in the clear of moving equipment. The majority of the rules are directed toward the person responsible for unloading. For example, requirements that unloading facilities have adequate lighting and that log dumps be kept reasonably free from debris are directed toward the employer. Certainly, the person in charge of the facilities would be responsible for obedience to these standards. We believe that subdivision (f) falls in this latter category. First, it is not specifically directed toward the employee. Secondly, the person in charge of the unloading facilities unloads the logs. He is in charge. He can control the entire operation. It would only be reasonable to assume, this being so, that subdivision (f) is directed toward him, not the truck driver who at this point is under his direction. The person in charge of the entire operation can insist that unloading be conducted in a certain manner. The truck driver cannot. Under such a situation the order would be a rule of conduct for the person in charge, not the truck-driver employee. Accordingly, Lokey was not guilty of violating a statute • because the statute did not set up a standard of conduct for-him.
 

 But even if. it can be said that subdivision (f) applied to Lokey, it does not necessarily follow that he was guilty of contributory negligence as a matter of law. The test to be applied in determining whether a person disobeying a statute has overcome the presumption of negligence is whether he has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desired to comply with the law. It is stated in
 
 Alarid
 
 v.
 
 Vanier,
 
 50 Cal.2d 617 [327 P.2d 897], at page 622, as follows; “A large number
 
 *529
 
 of eases, although varying considerably in the language used, stand generally for the proposition that where a person has disobeyed a statute he may excuse or justify the violation by evidence that he did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances who desired to comply with the standard of conduct established by the statute. ’ ’
 

 “.. . Whether such violation was excusable under the circumstances ordinarily presents a question of fact for the jury except in a case where reasonable men can draw but one inference from the facts. . . .”
 
 (McDonald
 
 v.
 
 Foster Memorial Hospital,
 
 170 Cal.App.2d 85, 92 [338 P.2d 607].)
 

 The record shows that respondent had hauled into appellant’s mill for several months and that the unloading procedure was the same on the date of the accident as it had been previously; that appellant’s employee, the crane operator, directed respondent where to stop his truck and in general supervised the unloading operation; and that the load seemed solid when carefully surveyed by respondent before he went underneath to remove the wrappers, and when he loosened his binder the load did not give.
 

 We believe that under the circumstances shown by the record in the instant case, and assuming that said subdivision (f) applied to respondent Lokey, the question of whether respondent had sustained the burdén of showing that he did what might reasonably be expected of a person of ordinary prudence acting under similar circumstances was one for the jury to decide.
 

 Whether Lokey was guilty of contributory negligence was, in our opinion, a question of fact for the jury. As stated in
 
 Atherley
 
 v.
 
 MacDonald, Young & Nelson,
 
 142 Cal.App.2d 575, 585 [298 P.2d 700]: “. . . It is a rare ease in which it can be said that the plaintiff is guilty of contributory negligence as a matter of law. Normally, of course, this defense is one of fact for the trier of the fact. ‘Where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the jury.’
 
 (McStay
 
 v.
 
 Citizens Nat. T. & S. Bank,
 
 5 Cal.App.2d 595, 600 [43 P.2d 560]; see also
 
 Rau
 
 v.
 
 Redwood City Woman’s Club,
 
 111 Cal.App.2d 546 [245 P.2d 12].) It is of course true that a plaintiff is under a duty ‘to look where he was going and to observe that which was in plain sight in front of him.’
 
 (Curland
 
 v.
 
 Los Angeles County Fair Assn.,
 
 118 Cal.App.2d 691, 695 [258 P.2d 1063].) But the same case on the same
 
 *530
 
 page also points out: ‘Whether the danger was obvious to plaintiff was a question of fact for the jury. [Citations.] Whether a person, under the circumstances, made a reasonable use of his facilities is also a question for the jury.’ ”
 

 We believe that in the application of the above-stated rule the test of negligence as applied to a driver of a logging truck about to unload his truck should be: Would a reasonably prudent person situated as the respondent was, knowing what respondent knew, i.e., the apparent condition of this specific load, having worked in this area under the conditions imposed, have been justified in acting upon the appearances and under the conditions in the manner that the respondent acted on this occasion? Do the facts point unerringly to the negligence of the respondent as being a contributing proximate cause, or are there questions left open for determination by the trier of fact? The fact questions to be determined by the jury were these: (1) Did the appellant provide a positive safeguard ? (2) Did the safety order regarding safeguards apply to the respondent ? If it did apply, and if he did violate that order, was his violation a proximate cause of the injury? (3) Was the load disturbed by the battering given it by dropping the large log on top of it on several occasions ? (4) Did leaving the large log adjacent to the truck create an unsafe condition? (5) Could the large log have been handled by straps and prevented battering the load and dropping the large log on the wrong side of the truck? (6) Did the log that fell off the truck fall off because of the battering given it by the large log? (7) Would respondent have been injured had the large log not been left adjacent to his truck, i.e., could he have escaped had he not been required to go under the truck because of the close proximity of the large log? These were questions for the jury to determine, and we cannot say that the implied finding of the jury in favor of respondent upon these issues is without support in the record. The argument of appellant is in effect: True it was our responsibility to obey the safety order and furnish safe appliances, but it was respondent’s duty to see that we performed that duty and he is therefore barred by contributory negligence as a matter of law if he does not see to it that we do. The argument is ingenious but does it not create a doctrine of absolute
 
 nonliability
 
 in cases where the defendant’s negligence is predicated upon the violation of a safety order? We cannot believe the Legislature so intended in enacting the Labor Code. We think its aim was to protect the workman, not to invite
 
 *531
 
 employer violation by granting such convenient absolution. Indemnity insurance premium rates should be quite nominal if such were the rule.
 

 Appellant also contends that Lokey assumed the risk. The evidence discloses that subdivision (f) of the safety order was violated by appellant because a safety device was not used. It is well settled that the defense of assumption of risk is not available where a safety order is violated by the person asserting the defense. “ 1 [I] n cases of violation of a safety regulation the defendant cannot defend on the ground that the plaintiff for whose protection the regulation was passed assumed the risk.’ ”
 
 (Atherley
 
 v.
 
 MacDonald, Young & Nelson, supra,
 
 p. 587.)
 

 Appellant also contends that Lokey, who it alleges was a business invitee, could not recover for injuries resulting from an obvious danger. What we believe appellant is contending is that Lokey was contributorily negligent as a matter of law because he intentionally exposed himself to a danger of which he was aware. This contention has been hereinbefore discussed. We reiterate that “contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have draAvn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. ’ ’
 
 (Anthony
 
 v.
 
 Hobbie,
 
 25 Cal.2d 814, 818 [155 P.2d 826].) The evidence does show that the load seemed secure and disclosed that it was a custom and practice at the mill to unload logs without the use of a safety device. This evidence was sufficient to make the question one for the jury and not one for the court.
 

 Appellant also challenges certain instructions given by the court.
 

 Appellant first contends that the court erred in instructing the jury as to the duties of an employer to an employee. Appellant contends these were erroneous because Lokey was not its employee. These instructions were proper.
 

 In the case of
 
 Williams
 
 v.
 
 Pacific Gas & Elec. Co.,
 
 181 Cal.App.2d 691 [5 Cal.Rptr. 585], this court said at page 708:
 

 “ ‘Section 6302, Labor Code, defines “place of employment” as “any place, and the premises appurtenant thereto, where employment is carried on . . .” (Section 6304 reads: “ ‘Em
 
 *532
 
 ployer’ shall have the same meaning as in section 3300 and shall also include every person having direction, management, control, or custody of any employment,
 
 place of employment,
 
 or any employee.” (Emphasis ours.) This definition is obviously intended to enlarge the meaning of ‘ ‘ employer ’ ’ beyond its usual meaning for the purposes, of. Division 5 of the Labor Code in which it is found and which deals specifically with “Safety In Employment.”. -Where an owner of real property contracts to have work done on his property such property becomes a place “where employment is carried on” and hence a place of employment under the definition of section 6302. Since the owner has “custody and control” of his own property, he then has custody and control of a “place of employment” and hence is an “employer” within the definition of section 6304. This was the specific holding of the court in
 
 Maia
 
 v.
 
 Security Lumber & Concrete Co.,
 
 160 Cal.App.2d 16 [324 P.2d 657]. In that ease a safety order adopted pursuant to the authority of division 5 of the Labor Code required a safety control to be locked in the “off” position or the machine to be disconnected from its source of power, and certain cautionary signs to be placed thereon, whenever any repairs were being made on a power driven machine. While such a machine was being repaired by the employee of a contractor with the owner the machine was started resulting in injury to the contractor’s employee. The trial court instructed that this safety order applied only to the contractor and not to the owner unless the jury found that the repair work was undertaken by the employee of the owner as well as the contractor’s employee. Following defendant’s verdict the District Court of Appeal reversed for error in this instruction holding that .within the meaning of section 6304 the landowner was an employer and the jury should have been instructed that the duty of carrying out the safety order rested on it as well as on the contractor. (160 Cal.App.2d p. 20.) A hearing was denied by the Supreme Court. ’
 

 “We believe that a proper construction of said section 6304 is that it intended to enlarge the meaning of the word ‘employer ’ beyond its usual meaning in eases involving the safety of employment.
 
 (Johnson
 
 v.
 
 A. Shilling & Co., supra
 
 [170 Cal.App.2d 318 (339 P.2d 139)].) If the owner of the property has created a dangerous condition, he is an employer to a person rightfully engaged in the performance of his employment on or about the property where the dangerous condition was created even though the person is actually the employee
 
 *533
 
 of another.
 
 (Johnson
 
 v.
 
 A. Schilling & Co., supra.)
 
 We are therefore of the opinion that the court did not commit error in reading the safety order to the jury.”
 

 Appellant also objects to the court’s instruction on assumption of risk. The instruction reads as follows: “Finally and specially,, if you find the defendants violated the state laws or safety orders hereafter read to you and that such violation was a proximate cause of the injury to Dean Lokey, you are instructed that the defense of assumption of risk is not available to the defendants. ’ ’
 

 , Appellant objects, to the use of the word “specially” which
 
 it is
 
 claimed unduly emphasized the instruction and eliminated consideration of the doctrine of the jury. Under the facts of this case the doctrine was inapplicable so no prejudice could have resulted.
 

 Appellant also objects to the following instruction on contributory negligence: “In considering the question of contributory negligence it should be borne in mind that the amount of care that a working man must exercise is affected by the attention given by him to his work and a determination of the issue of contributory negligence, if any, should not be made without weighing this factor.”
 

 All the parties agreed that unloading logging trucks was a dangerous occupation. Appellant claims the instruction only applies to working in a place involving possibilities of injury. Since the qualification was met, it was not error to give the instruction. .
 

 Appellant also complains because the court instructed the jury that appellant had a duty to furnish the requisite safety; appliances. This part of the instruction was clearly correct. Appellant was in control of this phase of the work. The major objection is that it was an incomplete statement of appellant’s duty. It was correct as far as it went and in that regard no error can be predicated. The rest of the objections are that the instruction was argumentative in that it stated: “At most he [the driver] was required by the safety orders, so far as applicable to him, to take off the binders under safety conditions furnished by the requisite equipment required by Pine'Mountain . . . ,” and “He, of course, could not furnish the appliances for unloading nor was he required to do so.” While the statement that the driver could not furnish the safety appliances for unloading could have been eliminated, we do pot believe there was any prejudicial error in giving, it, ....
 

 
 *534
 
 Because of the numerous contentions of error made by appellant, we have made a careful study of the entire record in the instant case. Taking the record as a whole and bearing in mind the plain and meaningful words of section
 
 4x/%
 
 of article VI of our state Constitution, we are satisfied that even if appellant is correct in some of his contentions of error no miscarriage of justice has resulted.
 

 The judgment is affirmed.
 

 Peek, P. J., and Pierce, J., concurred.
 

 A petition for a rehearing was denied August 3, 1962, and appellant’s petition for a hearing by the Supreme Court was denied September 5, 1962.