[Sac. No. 7791.   In Bank.   May 29, 1967.]

ROBERT ALBER, Plaintiff and Appellant, v. C. WILLIAM OWENS et al., Defendants and Respondents.

Bradford, Cross, Dahl & Hefner and William A. Wilson for Plaintiff and Appellant.

Rust & Hoffman, David C. Rust and Ellis J. Horvitz for Defendants and Respondents.

SULLIVAN, J.—Plaintiff appeals from a judgment of nonsuit entered in an action for damages for personal injuries.

Viewing the evidence under the applicable rules (*Blumberg v. M. & T. Inc.* (1949) 34 Cal.2d 226, 229 [209 P.2d 1]; *Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768]), we set forth the following pertinent facts. Plaintiff was the president and a co-owner of Alber & Van, Inc., a cement subcontractor for the construction of an apartment house complex. Charles Van Landingham, the other co-owner, was vice-president of the firm. Although the duties of the two men sometimes overlapped, generally speaking, plaintiff's position was that of a manager and superintendent while Van Landingham's was that of a foreman. Plaintiff's duties were to estimate the job, assign the work, and act basically as a coordinator. He was a working employee of the firm, receiving a weekly salary of $200; he did "physical work" on the jobs and in addition to his other duties "would go out and help pour on the jobs"; he was a member of "the union." Defendants were the own-

ers, developers and the general contractor-supervisor of the project.

On the day of the accident here involved, Rex Walker, a laborer employed by Alber & Van, Inc., was on the second story of one of the apartment buildings and was nailing wire mesh in preparation for the pouring of concrete on the second-story balcony. Walker needed tin snips to cut the mesh and called to plaintiff who brought them up to him. Both men then proceeded to cut the mesh and nail it down to the platform, working on their hands and knees. In the course of this work, plaintiff fell off the balcony to the ground level and sustained serious injuries, including brain damage followed by retrograde amnesia. His present action is grounded on the theory that his fall resulted from defendants' negligent failure to provide guard rails on the second-story platform.

The parties raise no issues relating to defendants' negligence. Indeed the record before us establishes a duty on the part of defendants respectively to furnish plaintiff a safe place to work, either on the theory that as a result of an invitor-invitee relationship they owed him a common law duty to provide him with a safe place to work or to warn him of dangers not obvious (*Florez* v. *Groom Development Co.* (1959) 53 Cal.2d 347, 354-355 [1 Cal.Rptr. 840, 348 P.2d 200]; *Pauly* v. *King* (1955) 44 Cal.2d 649, 653 [284 P.2d 487]; Rest. 2d Torts, § 343) or on the theory that they were employers within the meaning of the Labor Code (§ 6304)[1] and therefore under a nondelegable duty to comply with the applicable safety provisions found therein. (*Souza* v. *Pratico* (1966) 245 Cal.App.2d 651, 657 [54 Cal.Rptr. 159]; *Conner* v. *Utah Constr. & Mining Co.* (1964) 231 Cal.App.2d 263, 276 [41 Cal.Rptr. 728].) ▮ However, whether liability for failure to provide a safe place to work is predicated upon the common law duty or the statutory duty, the defense of contributory negligence is available to defendants. (*Mason* v. *Case* (1963) 220 Cal.App.2d 170, 177-179 [33 Cal.Rptr. 710]; *Mula* v. *Meyer* (1955) 132 Cal.App.2d 279, 284-285 [282 P.2d 107].)[2]

---

[1]Hereafter, unless otherwise indicated, all section references are to the Labor Code.

Section 6304 provides: " 'Employer' shall have the same meaning as in section 3300 and shall also include every person having direction, management, control, or custody of any employment, place of employment, or any employee."

[2]*Mula* and *Mason* also hold that section 2801, which limits the defense of contributory negligence in an action against an employer to recover damages for personal injury to, or for death of, an employee, is not

In the case at bench, the motion for nonsuit was made and granted on the basis that, irrespective of any duty imposed on defendants as employers within the meaning of section 6304 to furnish a safe place to work (§§ 6400, 6401, 6402, 6403),[3] plaintiff, as a person performing supervisory and managerial functions, was himself an employer within the meaning of section 6304. As such, according to the theory of the nonsuit, he had a concurrent and identical, if not greater, statutory duty to furnish a safe place to work for all employees of Alber & Van, Inc. and by failing to do so was himself guilty of contributory negligence as a matter of law and therefore barred from recovery.

■ Thus, the charge of contributory negligence asserted against plaintiff poses a novel issue: Whether a plaintiff-employee, who *vis-a-vis* other employees under him is also an employer within the scope of section 6304, is, as a matter of law, to be thereby held to the rigorous statutory safety obligations imposed on employers in evaluating his care for his own safety. The issue is resolvable by reference to the legislative purposes in regulating the relationships involved.

Plaintiff's duties in his capacity as an employer arose out of the safety in employment provisions of the Labor Code. (Lab. Code, div. 5, §§ 6300-7804.) The substance of division 5

applicable in all actions by an employee against a statutory employer, as the term ''employer'' is used in its expanded meaning in section 6304 dealing with workmen's safety. However, the availability of the defense of contributory negligence is limited by section 2801 in respect to all defendants who are employers as defined by section 3300. By virtue of section 2801, where a section 3300 employer's violation of the safety laws contributed to an injury, he is subject to a conclusive presumption that the injured employee was not contributorily negligent, and, where an injury results from only want of ordinary or reasonable care, contributory negligence acts to diminish, but not to exclude, recovery.

[3]Section 6400 provides: ''Every employer shall furnish employment and a place of employment which are safe for the employees therein.''

Section 6401 provides: ''Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes, which are reasonably adequate to render such employment and place of employment safe. Every employer shall do every other thing reasonably necessary to protect the life and safety of employees.''

Section 6402 provides: ''No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe.''

Section 6403 provides: ''No employer shall fail or neglect: (a) To provide and use safety devices and safeguards. (b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe. (c) To do every other thing reasonably necessary to protect the life and safety of employees.''

was first enacted in 1917[4] as part of a broad legislative program, which included the passage of the workmen's compensation provisions,[5] designed to improve the position of the working man. The legislative program was two-pronged; it sought increased safety on the job by imposing duties that were greater than those prescribed by the common law (*Souza* v. *Pratico, supra,* 245 Cal.App.2d 651, 657; *Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d 263, 271-272; *Jean* v. *Collins Constr. Co.* (1963) 215 Cal.App.2d 410, 416-417 [30 Cal.Rptr. 149]), and, if injury occurred, it sought mitigation of hardship by a system of loss-shifting that was largely unknown under the common law. (See generally, 2 Hanna, Employee Injuries and Workmen's Compensation (1954) pp. 3-21.)

As we have already noted, the statutory safety provisions directed the employer to furnish a safe place of employment and forbade him to permit or require an employee to be in any unsafe place of employment. (§§ 6400, 6401, 6402, 6403; see fn. 3, *ante.*) Construction Safety Orders[6] imposed more specific duties under this general statutory obligation. In the instant case, the applicable Construction Safety Orders specified that: "Railings shall be provided on all open sides and ends of all built-up scaffolds, runways, ramps, rolling scaffolds, elevated platforms, or other elevations ten feet (10') or more above the ground, floor, or level underneath."[7]

We have adopted the statutory safety provisions as standards of care applicable in an action at common law against a party included within the section 6304 definition of employer. Breach of this statutory duty by the employer is negligence *per se.* (*Atherley* v. *MacDonald, Young & Nelson, Inc.* (1956) 142 Cal.App.2d 575, 587 [298 P.2d 700].) An adoption of this statutory standard of care furthered the legislative purpose in

---

[4]Stats. 1917, ch. 586, §§ 33-54, pp. 861-867.

[5]Stats. 1917, ch. 586, §§ 1-32, 55-74, pp. 831-861, 868-879.

[6]The Division of Industrial Safety promulgates the Construction Safety Orders (Cal. Admin. Code, tit. 8) under the statutory authority of section 6500.

[7]Cal. Admin. Code, tit. 8, § 1616 at the time of the accident; a similar order is now found at Cal. Admin. Code, tit. 8, section 1621, subdivision (a).

The evidence is not clear as to whether the balcony was an elevation of 10 feet or higher. The safety orders provide only a minimum standard of care, however, and a failure to provide railings for platforms under the specified height may also constitute negligence. (*Johnson* v. *Industrial Acc. Com.* (1952) 112 Cal.App.2d 363, 367-368 [246 P.2d 114].) Hence, an employer's duty in this case may arise either under the Construction Safety Orders or under the more general statutory duty.

these cases where "the plaintiff is one of a class of persons whom the statute was intended to protect and the harm which has occurred is of the type which it was intended to prevent." (*Finnegan* v. *Royal Realty Co.* (1950) 35 Cal.2d 409, 416 [218 P.2d 17]; *Atherley* v. *MacDonald, Young & Nelson, Inc., supra; Mula* v. *Meyer, supra,* 132 Cal.App.2d 279, 284.)

The responsibility for implementing the safety standards, a matter of vital importance in the construction industry,[8] is placed through the broad statutory definition of an employer. (§ 6304, fn. 1, *ante.*) While not all general contractors (*Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 106-107 [18 Cal.Rptr. 527, 368 P.2d 127]), or even all corporate officers of the actual employer (e.g., officers outside the "chain of responsibility" for the company activity in which the accident occurs: see *Mason* v. *Case, supra,* 220 Cal.App.2d 170, 176-177; *Towt* v. *Pope* (1959) 168 Cal.App.2d 520, 528-529 [336 P.2d 276]), are employers in the terms of section 6304, the farther down the command hierarchy of a construction job one focuses his attention, the more likely it is that one finds that any employee who is in a supervisory position is a statutory employer with the consequent duty of complying with section 6400 and the pertinent Construction Safety Orders. (See *Cravens* v. *Kurtz* (1962) 210 Cal.App.2d 810, 812-815 [26 Cal.Rptr. 802]; *Jackson* v. *Georgia-Pacific, Inc.* (1961) 195 Cal.App.2d 412, 416-419 [15 Cal.Rptr. 680].) Undoubtedly safety is encouraged insofar as a duty for safety is imposed on many persons and the extensive scope is therefore desirable.

The principles underlying these rigorous, broadly imposed duties for safety and the civil liability consequent upon the failure to fulfill them, promote both legislative objectives: job safety and compensation for injury. Defendants would now have us adopt a rule clearly tending to thwart these statutory purposes. A rule of concurrent obligations, as urged by defendants, that automatically ascribes to all employee-plaintiffs in civil actions for damages contributory negligence as a matter of law, would effectively insulate, by a prescript of absolute nonliability, all employers from liability to any employee except one bearing no responsibility whatsoever for "direction, management, control, or custody of any employment, place of employment, or any employee." (§ 6304.) Applica-

[8] See Brooks, *Tort Liability of Owners and General Contractors for on-the-Job Injuries to Workmen* (1965) 13 U.C.L.A. L. Rev. 99, 100, fn. 6.

tion of such a rule of law would make the statutory standards "simultaneously rules of care for employers and shields against liability as well." (*Mason* v. *Case, supra,* 220 Cal. App.2d 170, 181; cf. *Asplund* v. *Driskell* (1964) 225 Cal.App. 2d 705, 717 [37 Cal.Rptr. 652]; *Lokey* v. *Pine Mountain Lbr. Co.* (1962) 205 Cal.App.2d 522, 530-531 [23 Cal.Rptr. 293].) Such elimination of employers' liability would remove a great incentive to assume seriously the responsibilities for safety imposed by statute. We believe that it would constitute a regression in the advances made by legislatures and courts in the past half century to correct one of the chief reproaches to the law, the uncompensated industrial injury. (See Prosser, Torts (3d ed. 1964) p. 558.)

The facts of this case disclose the potential for injustice of such a rule. Even on a relatively small construction project, as was here involved, no less than six subcontractors participated. Each of the subcontractors was an "employer," as were any of its employees acting in a supervisory capacity on the job. All of the "employers" may be assumed to have used the balcony area at least as a method of ingress and egress from any work accomplished at the second-floor level. It can be argued that on each of these "employers" rested the statutory duty to provide a safe place to work and hence the duty to construct a railing or to prevent their employees from entering the unsafe area. (§§ 6400, 6402.) Yet as a practical matter in many cases only the general contractor is in a position to coordinate work or provide expensive safety features that protect employees of many or all of the subcontractors. (See *Gonzales* v. *Robert Hiller Constr. Co.* (1960) 179 Cal.App.2d 522, 531-534 [3 Cal.Rptr. 832]; Note (1964) 15 Hastings L.J. 604, 613.) Evidence received in the present case as to the prevailing practice in the industry shows, for instance, that general contractors consider it their duty, not that of the subcontractors, to provide railings where needed. Finally, it must be recognized that even if subcontractors and supervisory employees are aware of safety violations they often are unable to rectify the situation themselves and are in too poor an economic position to compel their superiors to do so. Yet we are requested by defendants to protect the general contractor from liability and to bar the injured employer-employee from recovery in such a situation.

In this area we must strive to attain the goals fixed by the Legislature: to impose responsibility for safety requirements on those who have the greater practical opportunity and abil-

ity to insure compliance with safety standards and to allow the protected class of workmen, injured by a failure to comply, to recover their damages from the responsible parties. No prior decision blocks our course. Defendants refer us to several recent cases[9] that foreclose a direct employer, or workmen's compensation insurance carrier standing in its place, from recovering from a general contractor, directly or indirectly, sums paid to an injured employee under the workmen's compensation plan. They are not pertinent to the issue we face here. The theory of those cases is that the law places an identical duty on both statutory employers to provide a safe place to work for the benefit of the plaintiff-employee.[10] In considering the relationship between the employers of an injured workman, those courts decided only that if both employers are found to have negligently failed in their duty, neither may shift to the other employer his financial responsibility to the employee. These holdings are not inconsistent with the general purposes of the Labor Code, which makes no attempt to shift responsibilities among employers, but only seeks to impose wide operational and financial responsibility for the protection of employees.

From our examination of reported cases, it appears that a rule of contributory negligence as a matter of law based on rigorous statutory standards of care has never before been urged to an appellate court in this state, although its application arguably would have automatically precluded recovery by workmen in several cases. (*Seckler* v. *Yamin* (1963) 212 Cal.App.2d 67 [27 Cal.Rptr. 711] (plaintiff's decedent was an independent contractor); *Johnson* v. *Cal-West Constr. Co.* (1962) 204 Cal.App.2d 610 [22 Cal.Rptr. 492] (plaintiff's decedent was the subcontractor's foreman); *Johnson* v. *Nicholson* (1958) 159 Cal.App.2d 395 [324 P.2d 307] (plaintiff's decedent was the subcontractor's foreman); *Bragg* v. *Mobilhome Co.* (1956) 145 Cal.App.2d 326 [302 P.2d 424] (plaintiff was an independent contractor).) The undesirability of such a rule of immunity for employers may be mea-

[9]*Jones* v. *McFarland Co-op Gin, Inc.* (1965) 237 Cal.App.2d 94 [46 Cal.Rptr. 572]; *Scott* v. *John E. Branagh & Son* (1965) 234 Cal.App.2d 435 [44 Cal.Rptr. 384]; *Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d 263; *Tate* v. *Superior Court* (1963) 213 Cal.App.2d 238 [28 Cal.Rptr. 548].

[10]Nevertheless, even where identical duties exist, it cannot be said as a matter of law that "where there is liability on the general contractor it must inexorably follow that liability shall co-exist against the subcontractor-employer." (*Souza* v. *Pratico, supra,* 245 Cal.App.2d 651, 660.)

sured by the response in other jurisdictions where contributory negligence often has been eliminated entirely as a bar to recovery in cases involving statutory standards of care created for the protection of workmen. (E.g., Safety Appliance Acts, 45 U.S.C.A. §§ 1-46; Federal Employers' Liability Act, 45 U.S.C.A. §§ 51, 53; *Gowins* v. *Pennsylvania R.R. Co.* (6th Cir. 1962) 299 F.2d 431, 433; *Osborne* v. *Salvation Army* (2d Cir. 1939) 107 F.2d 929, 931; *Bryntesen* v. *Carroll Constr. Co.* (1963) 27 Ill.2d 566 [190 N.E.2d 315, 317]; *Carterville Coal Co.* v. *Abbott* (1899) 181 Ill. 495 [55 N.E. 131, 134]; *Caspar* v. *Lewin* (1910) 82 Kan. 604, 83 Kan. 799 [109 Pac. 657, 665-666]; *Maurizi* v. *Western Coal & Mining Co.* (1928) 321 Mo. 378 [11 S.W.2d 268, 270-271]; *Koenig* v. *Patrick Constr. Corp.* (1948) 298 N.Y. 313 [83 N.E.2d 133, 134, 10 A.L.R.2d 848]; see Prosser, Torts (3d ed. 1964) p. 558.)[11] Similar eliminations of contributory negligence as a bar are common in circumstances where the statutory objective is the protection of classes of persons, other than workmen, in a position of economic inferiority or personal helplessness. (See Notes, 171 A.L.R. 894; 10. A.L.R.2d 853; Prosser, Torts (3d ed. 1964) pp. 435-436; cf. *Hudson* v. *Craft* (1949) 33 Cal.2d 654, 659-660 [204 P.2d 1, 7 A.L.R.2d 696].)

However, as we have previously pointed out, contributory negligence may be asserted as a defense in California (*Mason* v. *Case, supra,* 220 Cal.App.2d 170, 177-178; *Maia* v. *Security Lbr. & Concrete Co.* (1958) 160 Cal.App.2d 16, 20 [324 P.2d 657]). But in evaluating the alleged contributory negligence of a plaintiff a jury must have reference to a particular standard of conduct. Standards of conduct free of fault are defined both by the Legislature and the courts and may differ depending on the relationship of the parties.[12] "The significance of [a] statute in a civil suit for negligence lies in its

---

[11] *Osborne* v. *Salvation Army* is especially instructive on the overriding social policies calling for recovery in these situations. The pertinent New York statutes not only required compliance with safety standards by employers, but in addition prohibited a worker from proceeding with his job " 'unless the equipment and safety devices required . . . are provided for his protection and used by him . . .' " (*Osborne* v. *Salvation Army, supra,* 107 F.2d 929, 933.) The court held that it would be an unacceptable anomaly to hold that a violation of a statute by one who should have provided the safety devices in the first instance could result in a deprivation of recovery to one for whose benefit the law was enacted.

[12] See *Kuntz* v. *Del E. Webb Constr. Co., supra,* 57 Cal.2d 100, 106-107; *Palmquist* v. *Mercer* (1954) 43 Cal.2d 92, 101-102 [272 P.2d 26]; *Dauer* v. *Aerojet General Corp.* (1964) 224 Cal.App.2d 175, 181 [36 Cal.Rptr. 356]; *Alvarado* v. *Anderson* (1959) 175 Cal.App.2d 166, 173-174 [346 P.2d 73]; Veh. Code, § 17158.

formulation of a standard of conduct that the court adopts in the determination of . . . liability. [Citations.] The decision as to what the civil standard should be still rests with the court, and the standard formulated by a legislative body . . . becomes the standard to determine civil liability only because the court accepts it.'' (*Clinkscales* v. *Carver* (1943) 22 Cal. 2d 72, 75 [136 P.2d 777]; *Mason* v. *Case, supra,* 220 Cal.App. 2d 170, 181.) The argument that the safety orders define a standard of care for employees assertible as a defense by employers has been previously rejected as incompatible with the legislative purposes. (*Mason* v. *Case, supra; Lokey* v. *Pine Mountain Lbr. Co., supra,* 205 Cal.App.2d 522, 530-531; see *Asplund* v. *Driskell, supra,* 225 Cal.App.2d 705, 717.) To further those same purposes, we reject the argument that plaintiff-employee's actions must be judged by the rigorous standards imposed on him by statute in his capacity as an employer. They are primarily for the protection of those who serve under him. We hold that his actions relevant to his own protection must be judged by the common law standard of care.

In order to bar an injured employee from recovery, therefore, a negligent employer must show that the employee acted in a manner unreasonable under the circumstances. (See *Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 236-239 [282 P.2d 69]; *Johnson* v. *Nicholson, supra,* 159 Cal.App.2d 395, 410-411.) Giving plaintiff's evidence the benefit of every legitimate inference that may be drawn from the evidence (*Estate of Lances, supra,* 216 Cal. 397, 400), we find it was error to hold that plaintiff's presence on the second floor balcony, unguarded by a railing, was contributory negligence as a matter of law. (Cf. *Florez* v. *Groom Development Co., supra,* 53 Cal.2d 347, 357-359; *Scott* v. *John E. Branagh & Son* (1965) 234 Cal.App.2d 435, 441-442 [44 Cal.Rptr. 384]; see *Conner* v. *Utah Constr. & Mining Co., supra,* 231 Cal.App.2d 263, 269-271.) The issue of contributory negligence must here be left to the jury.

Plaintiff contends that evidence of his retrograde amnesia also required submission of the case to the jury because it raised a presumption of due care in his favor. This presumption had been held to be evidence in itself sufficient to forestall a nonsuit based on contributory negligence. (See *Scott* v. *Burke* (1952) 39 Cal.2d 388, 394-395 [247 P.2d 313]; *Smellie* v. *Southern Pac. Co.* (1931) 212 Cal. 540 [299 P. 529].) Our resolution of the statutory standard of care issue obviates the

need for a ruling on this contention in the appeal before us, but on retrial it is clear that such a presumption would not have the effect of evidence. (Evid. Code, §§ 12, subds. (a), (b), 600, subd. (a).)

For the guidance of the trial court on retrial we also consider plaintiff's contention that expert testimony concerning custom and practice in construction safety is admissible on the issue of whether due care required construction of railings. "Where expert opinion evidence is offered, much must be left to the discretion of the trial court" (*People* v. *Cole* (1956) 47 Cal.2d 99, 105 [301 P.2d 854, 56 A.L.R.2d 1435]), but it is erroneous to exclude such testimony insofar as it is limited to custom and practice within the industry and to an opinion as to whether the lack of railings on this construction site conformed with that custom and practice, as such testimony involves matters beyond the common experience. (See *Reynolds* v. *Natural Gas Equipment, Inc.* (1960) 184 Cal.App.2d 724, 739 [7 Cal.Rptr. 879]; *Johnson* v. *A. Schilling & Co.* (1959) 170 Cal.App.2d 318, 324 [339 P.2d 139]; *Blinkinsop* v. *Weber* (1948) 85 Cal.App.2d 276, 283 [193 P.2d 96]; Evid. Code, § 801.)

The judgment of nonsuit is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke J. concurred.